576 So.2d 96 (1991)
STATE of Louisiana, Appellee,
v.
Thomas G. EPPERSON, Appellant.
No. 22233-KA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1991.
Writ Denied May 31, 1991.
Daryl Gold, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Powell A. Layton, Jr., Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before SEXTON, HIGHTOWER and VICTORY, JJ.
*97 SEXTON, Judge.
Pursuant to a Crosby[*] plea, defendant pled guilty as charged to three counts of possession of marijuana with intent to distribute. In addition to defendant's agreed forfeiture of cash, jewelry, and an automobile, the plea bargain contained a sentence recommended by the state, agreed to by the defendant, of three concurrent ten-year hard labor sentences and a fine of $3000. Except for his reserved right to appeal the denial of the motion to suppress the evidence forming the bases of these convictions, defendant waived any right to appeal.
Pursuant to the sentencing agreement, the district court imposed the following sentences: on count one, a ten-year hard labor sentence, with credit for time served, and a fine of $3000 plus court costs, assessing in default of payment of the fine an additional one year in jail; on count two, a ten-year hard labor sentence, with credit for time served, to run concurrently with count one; and on count three, a ten-year hard labor sentence, with credit for time served, to run concurrently with counts one and two.
Defendant argues that the evidence seized in three separate warrantless searches conducted at his residence by his probation officer were subterfuges for criminal investigations, with the result that evidence obtained should have been suppressed. We affirm the district court's denial of defendant's motion to suppress and, accordingly, affirm his convictions and sentences.
After being charged in Panola County, Texas, with possession of more than four ounces but less than 50 pounds of marijuana on May 28, 1987, the defendant pled guilty as charged and was sentenced to confinement in the Texas Department of Corrections for a term of six years and a fine of $3000 plus the costs of prosecution. The prison sentence was suspended and the defendant was placed on probation for a period of six years on August 13, 1987. Subsequently, his probation supervision was transferred to Louisiana because the defendant resided in Shreveport. In early November 1988, the defendant's supervision was assigned to John C. Shidler, a probation and parole officer in the Shreveport area.
On November 16, 1988, Shidler went to the defendant's residence in Shreveport to meet him and to see his residence. At the suppression hearing, Shidler testified that he introduced himself to the defendant as his new probation officer. The defendant invited Shidler and another probation officer into the residence. Standing in the dining room area, Shidler saw a tray in the bedroom which appeared to contain marijuana and cigarette rolling papers. When questioned, the defendant stated that his girlfriend smoked marijuana. The probation officer looked more closely and found cigarette rolling papers and a small amount of loose marijuana on the tray.
When Shidler asked if he could look further, the defendant consented. In a dresser drawer, Shidler found a plastic bag with approximately a pound of marijuana. Defendant was arrested and, while they were waiting for a probation and parole supervisor to arrive, defendant told the two probation officers that they might as well find the rest of it. The officers were directed by the defendant to a closet where they initially found nothing. The defendant told them to continue looking, and they found two paper bags, one of which contained 17 small bags of marijuana. The other had five medium-size bags of marijuana. Later, 15 pounds of marijuana was found in a plastic garbage bag in the attic. Also seized were $2500 cash, jewelry, a cellular telephone, and a Jaguar automobile.
In February 1989, Shidler received an anonymous phone call. The caller asked if he was the defendant's probation officer. When Shidler replied affirmatively, the caller stated, "Tommy Gene is holding some dope" and hung up. Later that day, Shidler and his supervisor went to the defendant's home. Shidler informed the defendant that someone reported that he was holding marijuana. The defendant stated *98 he did not have marijuana in the residence. Shidler told the defendant that he had to check out the complaint, but if there was only a small amount of marijuana for his own use, he would not be arrested.
Defendant then told Shidler that his girlfriend used marijuana and there might be some in a round container in the den. A plastic bag with marijuana residue was found in the container along with a partially smoked marijuana cigarette on a tray nearby. Based on those findings, Shidler felt there was more marijuana in the residence. He went back to the bedroom where the marijuana had been found in November and heard a disturbance in the dining room area. Shidler found his supervisor and the defendant's girlfriend outside, where the supervisor was trying to retrieve something from the girlfriend's shirt pocket. Defendant had given the girlfriend his wallet. Since Shidler suspected that the wallet contained contraband, he took the wallet and found a large amount of money, approximately $1000. Because they found the money and the small amounts of marijuana, the probation officers suspected that there was more marijuana in the residence and continued the search. In a closet in a hot tub room, they located a suitcase with four large packages of marijuana weighing approximately one pound each. Defendant told the officer he might as well go back in and get the rest of the marijuana. On further searching, another two pounds of marijuana was found in a paper bag. Additional marijuana and some scales were found in another closet.
In March 1989, Shidler and other probation officers went to defendant's residence to arrest him on a probation violation warrant. At that time, approximately $1000 in cash was seen in plain view on the kitchen table. Shidler, seeing the large amount of money, became suspicious that there was more marijuana on the premises. Shidler had previously arranged for assistance from the Shreveport Police Department narcotics officers because he felt that the defendant was still engaged in the sale of marijuana. The search revealed a single marijuana cigarette in the house. At that point, Shidler asked for the assistance of the police narcotics dog which found two to three pounds of marijuana in a woodpile outside. Marijuana was also found in a small jar in a house adjacent to the residence. In an old stove, approximately 40 small bags of marijuana were found.
In overruling the motions to suppress, the district court cited the following conditions to which the defendant had agreed when he was placed on probation in the state of Texas:
a. Neither commit nor be convicted of any offense against the laws of this state or of any other state or the United States.
....
c. Avoid injurious or vicious habits, including abstaining from the use of all intoxicating beverages and the unlawful use of controlled substances or dangerous drugs.
d. Avoid persons and places of disreputable or harmful character, including those persons with criminal records and those places where alcoholic beverages are sold or consumed.
....
f. Permit the Probation Officer of Panola County, Texas, or any other Probation Officer to whom your supervision may be assigned to visit you at home or elsewhere.
....
The district court found that those conditions obligated Shidler to visit defendant's residence to make certain defendant was complying with the terms and conditions of his probation. Shidler had the right to conduct the searches under the circumstances of this case, the district court concluded, stressing the large amount of marijuana found in the first search. The trial court found reasonable suspicion for the searches and no subterfuge by police or sheriff's personnel.
Defendant argues that the warrantless searches on these three occasions were subterfuges for criminal investigations. Defendant cites State v. Patrick, 381 So.2d 501 (La.1980), for authority that a parolee has a far greater expectation of privacy *99 than does a work release inmate. While that is correct, more relevant is this court's recent discussion of a warrantless search by a probation officer in State v. Vailes, 564 So.2d 778, 780 (La.App. 2d Cir.1990):
Probationers and parolees occupy essentially the same status. Both, it is well recognized, have a reduced expectation of privacy which allows reasonable warrantless searches of their person and residence by their probation or parole officer, even though less than probable cause may be shown. State v. Malone, 403 So.2d 1234 (La.1981); United States v. Scott, 678 F.2d 32 (5th Cir.1982); Latta v. Fitzharris, 521 F.2d 246 (9th Cir. 1975), writ denied, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975); State v. Carter, 485 So.2d 260 (La.App. 3rd Cir.1986); writ denied, 492 So.2d 1216 (La.1986), cert. denied, 479 U.S. 1087, 107 S.Ct. 1293, 94 L.Ed.2d 149 (1987). That reduced expectation of privacy evolves from a probationer's conviction and his agreement to allow a probation officer to investigate his activities in order to confirm compliance with the provisions of his probation. Carter, supra. However, a probationer is not subject to the unrestrained power of the authorities. A search to which he is subjected may not serve as a subterfuge for a police investigation, Malone, supra. Instead, it is to be conducted when the officer believes such a search is necessary in the performance of his duties, and must be reasonable in light of the total atmosphere in which it takes place. In determining the reasonableness of a warrantless search, we must "consider (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted." Malone, supra, at 1239.
In Vailes, a confidential informant and narcotics officer told defendant's probation officer that defendant was using and selling drugs and possibly possessing firearms at his home. Probation officers went to the defendant's home and announced that they intended to search for probation violations. Both the district court and this court found that the unannounced inspection was in keeping with the probation officer's duty to assure the probationer's compliance with the terms of probation.
Both the state and defendant in the instant case rely on State v. Malone, 403 So.2d 1234 (La.1981). This case does not assist the defendant in his claim that the searches conducted in the present matter were subterfuges for criminal investigations. There, the supreme court noted that an individual on probation does not have the same freedom from governmental intrusion as an ordinary citizen. The probation officer was simply supervising defendant's probation. When he arrived in the defendant's yard, he noticed a hose going from defendant's house into a wooded area. Because he knew that cultivation of contraband was common in the area, the officer was suspicious. He followed the hose into the wooded area and found marijuana. The officer was said to have a reasonable suspicion of the possibility of criminal activity of a nature which generally and specifically violated the conditions of the defendant's probation. Therefore, he did not need a warrant to conduct his limited search. While the decision to search must be based on something more than a mere hunch, probable cause is not required, and only a reasonable suspicion that criminal activity is occurring is necessary for a probation officer to conduct the warrantless search. Although the Malone case did not specifically discuss warrantless searches inside a probationer's home, State v. Vailes, supra, approves such a search.
In the November 1988 search, Shidler was properly conducting his duties as a probation officer when he went to introduce himself to the defendant and then saw marijuana and rolling papers in plain view. Because of his knowledge of defendant's prior conviction, and the presence of contraband in plain view, a reasonable suspicion to search was present. Defendant also acknowledged that his girlfriend smoked marijuana and there may be some in the residence. The only police involvement in that search was a phone call made *100 by Schidler's supervisor after some of the contraband had been found. However, the search was actually conducted by the probation officers.
In February 1989, the probation officer acted on an anonymous tip that the defendant had contraband in his home. Shidler had a duty as a probation officer to investigate and determine whether or not the defendant was abiding by the terms of his probation. Due to the defendant's previous conviction, the large amount of contraband found in November 1988 (some 20 pounds), and defendant's statement that his girlfriend used marijuana, the officers had a reasonable suspicion to search. In addition to finding marijuana residue in the false bottom of a container, the officers also found a partially smoked marijuana cigarette on a tray. The disturbance involving the large amount of cash also added to their reasonable suspicion that illegal activities were being conducted by the defendant. There is no allegation of any police activity in the second search.
In March 1989, Shidler and other probation officers went to the residence to execute a warrant for the defendant's arrest for violation of his Texas probation. He had every right to be at defendant's home. A large amount of cash in plain view gave Shidler reasonable suspicion that contraband was present. At this point, Shidler asked for assistance from narcotics police officers and a narcotics dog. Only one marijuana cigarette was found in the house but a large amount of contraband was found by the dog outside of the residence. The police activity was not a subterfuge because the police involvement was initiated by the probation officer who sought technical assistance in order to properly supervise his probationer.
The three searches at issue were conducted on the basis of reasonable suspicion that defendant was in violation of the conditions of his probation. Although there was police involvement in the last of the three searches, the probation officer explained that he had concerns about defendant's potential reaction to being arrested for probation violation and, given the nature of defendant's original conviction and the substantial amounts of marijuana located in defendant's residence on the probation officer's two previous visits, we do not find it unreasonable that the probation officer sought out police department assistance for the last visit. Finding no merit to defendant's arguments regarding any of the searches, we affirm the district court's denial of defendant's motion to suppress and affirm the defendant's convictions and sentences.
AFFIRMED.
NOTES
[*] State v. Crosby, 338 So.2d 584 (La.1976).