614 So.2d 1279 (1993)
STATE of Louisiana, Appellee,
v.
Larry SHIELDS, Appellant.
No. 24581-KA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1993.
Rehearing Denied March 25, 1993.
*1280 Daniel C. Scarborough, IV, Shreveport, for appellant.
*1281 Paul J. Carmouche, Dist. Atty., Ted Cox and Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before SEXTON, NORRIS and VICTORY, JJ.
NORRIS, Judge.
Defendant, Larry Shields, was charged by bill of information with violation of La. R.S. 40:967F(1)(b), possession of 200 grams or more, but less than 400 grams, of cocaine. After trial by jury, he was found guilty as charged and sentenced as an habitual offender to a term of 50 years at hard labor, all of which is to be without benefit of probation or suspension of sentence in accordance with La.R.S. 15:529.1G, including 10 years without benefit of parole, La.R.S. 40:967G.
Shields now appeals, asserting two assignments of error. For the reasons expressed, we affirm the conviction but vacate the sentence and remand for resentencing.

FACTS
On June 24, 1991, only three days before his arrest in the present matter, Shields pled guilty to possession of stolen property, La.R.S. 14:69. At that time, the court sentenced him to two years at hard labor, suspended execution, and imposed two years of supervised probation. On that same day, Shields met with his supervising probation officer, Veda Westby, who explained to him that the conditions of his probation required him to refrain from criminal conduct and to permit the probation officer to make unannounced visits at anytime. Shields told Agent Westby, among other things, that his address was 254 Wyandotte in Shreveport.
Three days later, on June 27, 1991, between 11:00 and 12:00 noon, Sergeant Henry Whitehorn of the Louisiana State Police was contacted by a confidential informant, with whom he had worked in the past and considered to be reliable, and told that Larry Shields had been seen in the Allendale or Ledbetter Heights area of Shreveport with a quantity of cocaine and possibly firearms. The informant further stated that he had followed Shields, who was driving a gray Pontiac Fiero, to the 200 block of Wyandotte.
Upon receiving this information, Sergeant Whitehorn performed a criminal history check on Shields and learned that he was on probation; he relayed this tip to the Shreveport District Office of the Division of Probation and Parole. He stated at trial that he did not act on the informant's tip himself because, given that the informant had not actually seen Shields take the cocaine into a specific residence on Wyandotte, he thought he would not have the probable cause necessary to obtain a search warrant. (R.p. 312).
Activated by this information, Agent Westby and four other probation officers proceeded to 254 Wyandotte for an unannounced visit between 2:00 and 3:00 p.m. to determine if Shields was violating probation. The probation officers took two cars and parked a block away from Shields's apartment.[1] From this distance, they could see a gray Pontiac Fiero parked in front of the apartment building. They radioed Administrative Supervisor Wyche who had remained at the probation office; Wyche then telephoned Shields's apartment at least twice, but no one answered.
While waiting for Wyche to make contact with Shields, the probation officers observed a black female, Mary Davis, come from the direction of the residence and begin to get into the Pontiac Fiero. Fearful that the female might drive off in the car, removing possible evidence of a probation violation, the agents drove up and blocked the Pontiac's exit. When questioned, the woman said that Larry Shields was inside the residence. Thus, the agents went to the door, knocked, and identified themselves as probation and parole agents. When Shields did not respond, the agents knocked and identified themselves a second *1282 time. At this point, Shields opened the door, and the agents entered.
Once inside, the agents seized control of Shields and told him to place his hands against the wall. They patted him down and explained that they were responding to a report of a possible probation violation. They further advised Shields that they were going to handcuff him for their own safety. After handcuffing him, the agents began to search the residence. In plain view were a small set of mechanical scales on the dining table and a police scanner on the coffee table. They tilted the couch back and discovered beneath it an orange Nike shoebox containing what was later determined to be 280 grams of cocaine and various drug paraphernalia. At that point, Shields was Mirandized and placed under arrest.
On the living room floor behind the drapes, the agents discovered a cookie tin containing over $3000.00 in cash. In the pocket of a coat hanging in the bedroom closet, the agents found a Royal Crown bag containing a large amount of gold jewelry. The agents also found an automatic pistol clip containing live rounds of ammunition and various bills and receipts indicating that Shields had spent a large amount of money in a short period of time.
At that point, the agents notified the Louisiana State Police and the Drug Enforcement Agency. Officers from those agencies arrived at the residence between 3:20 and 4:00 p.m., but by that time the search had netted all the evidence that was to be found.
Prior to trial, Shields filed a motion to suppress incriminating statements made shortly after his arrest and a motion to suppress the evidence seized at the Wyandotte residence. On October 30, 1991, Judge Scott Crichton denied the motion to suppress the evidence. Likewise, immediately preceding trial on March 9, 1992, Judge Crichton denied the motion to suppress the incriminating statements, a matter not appealed.
On appeal, Shields essentially contends that the physical evidence introduced at trial was obtained through an illegal search and seizure and that the trial court erred in failing to suppress it. He also contends that his sentence is excessive.

SEARCH AND SEIZURE
Shields argues that the warrantless, nonconsensual search conducted by the probation officers served as a subterfuge for a criminal investigation proscribed by both article 1, section 5 of the Louisiana Constitution and the fourth amendment of the United States Constitution.
The law concerning a probationer's expectation of privacy is quite clear and was expressly stated in both State v. Vailes, 564 So.2d 778, 780 (La.App.2d Cir.1990) and State v. Epperson, 576 So.2d 96, 99 (La. App.2d Cir.), writ denied 580 So.2d 920 (1991) as follows:
Probationers and parolees occupy essentially the same status. Both, it is well recognized, have a reduced expectation of privacy which allows reasonable warrantless searches of their person and residence by their probation or parole officer, even though less than probable cause may be shown. State v. Malone, 403 So.2d 1234 (La.1981); United States v. Scott, 678 F.2d 32 (5th Cir.1982); Latta v. Fitzharris, 521 F.2d 246 (9th Cir. 1975), writ denied, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975); State v. Carter, 485 So.2d 260 (La.App.3rd Cir.1986), writ denied, 492 So.2d 1216 (La.1986), cert. denied, 479 U.S. 1087, 107 S.Ct. 1293, 94 L.Ed.2d 149 (1987). That reduced expectation of privacy evolves from a probationer's conviction and his agreement to allow a probation officer to investigate his activities in order to confirm compliance with the provisions of his probation. Carter, supra. However, a probationer is not subject to the unrestrained power of the authorities. A search to which he is subjected may not serve as a subterfuge for a police investigation, Malone, supra. Instead, it is to be conducted when the officer believes such a search is necessary in the performance of his duties, and must be reasonable in light of the total atmosphere in which it takes place. In determining the *1283 reasonableness of a warrantless search, we must "consider (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted." Malone, supra, at 1239.
The state bears the burden of proving the admissibility of any evidence seized without a search warrant. La.C.Cr.P. art. 703D; State v. Keller, 403 So.2d 693 (La. 1981); State v. Rogers, 476 So.2d 942 (La. App.2d Cir.1985). However, where a search for probation violation is concerned, reasonable suspicion that criminal activity is occurring will suffice. See Malone, supra.
In State v. Vailes, supra, this court upheld the search of a probationer's home under circumstances very similar to those in the present case. A confidential informant and a narcotics officer informed the defendant's probation officer that the defendant was illegally using and selling drugs at his home and possibly possessing firearms. The probation officer, together with four other probation officers, went to the defendant's residence. The defendant allowed the officers in, and after they advised the defendant that he was suspected of violating his probation, the officers searched the premises. They found weapons, explosives, and spare weapons parts in plain view; behind clothes in a closet, they found a rifle. The defendant was convicted of possession of firearms by a felon. This court, in upholding the validity of the warrantless search, noted that, after receiving information of a possible probation violation, the probation officer's responsibilities demanded that he assure his probationer's compliance with the terms of his probation. Indeed, the needs of society at large demanded that the officer insure such compliance. That compliance could best be accomplished by unannounced inspections of the probationer's home. With regard to the actual search conducted within the probationer's home, we found that:
[T]he officers ... were justified in continuing and expanding the search to ascertain the full extent or degree of the violation. Moreover, looking into a closet and moving aside clothing to reveal a rifle stored there constituted a reasonable exercise of the probation officer's authority.
Vailes, at 781.
The probation officers in the instant case certainly had a responsibility to investigate the information provided to them by Sergeant Whitehorn concerning the possible probation violation. Moreover, the facts supported a reasonable suspicion that the reported probation violation was accurate: the informant reported the presence of drugs at the 200 block of Wyandotte which encompassed Shields's address at 254 Wyandotte; parked in front of the residence was a gray Pontiac Fiero as reported; the phone calls to the apartment were not answered even though Shields was reportedly there; and items commonly associated with drug trafficking (a police scanner and mechanical scales) were in plain view on the coffee table and dining room table. While these factors alone may not be sufficient to form probable cause, they certainly arouse a reasonable suspicion that the probationer might indeed be in violation of probation. See Epperson, supra (holding the presence of a large amount of cash in plain view sufficient to support reasonable suspicion that contraband was present). As previously discussed, this reasonable suspicion may support a search of the probationer's home provided that the search itself is reasonable. Vailes, supra.
We must now determine the reasonableness of the search conducted in Shields's home. We are aided in this endeavor by the factors set out by our supreme court in Malone, supra.
(1) The scope of the particular intrusion: The probation officers approached Shields's residence only after several attempts had been made to contact him by telephone. When they finally approached the front door of the residence, they knocked and twice identified themselves as probation and parole officers. Only after Shields came to the door and opened it did the officers enter. There was no forced entry. While five officers did enter the *1284 residence, their number was not inconsistent with the information they had received regarding Shields's possible possession of firearms and their accompanying concern for their own safety.
(2) The manner in which the search was conducted: The officers immediately informed Shields that they were investigating a reported probation violation and that they were going to handcuff him for their own safety. Within plain view were items commonly associated with drug trafficking. The officers lifted the couch onto its back to reveal the box of cocaine which had been hidden beneath it. Their is no allegation nor indication in the record that the officers searched for contraband in the cushions of the couch or elsewhere within its frame. The act of lifting the couch does not appear to us to have been a violation of Shields's diminished expectation of privacy, especially since the box of cocaine presumably would have been discoverable by simply kneeling on the floor, lifting the flap of fabric that bordered the couch, and looking beneath it. The officers also discovered a large amount of gold jewelry in the pocket of a coat hanging in the bedroom closet. Again, there is no allegation that the officers searched within the seams of the clothes or otherwise dismantled the garments. Finally, the officers opened a cookie tin found behind the curtain, containing a large amount of cash. We conclude that the act of opening the cookie tin was not a violation of Shields's diminished expectation of privacy. Thus, the manner in which the search was conducted appears reasonable.
(3) The justification for initiating the search: As previously discussed, the officers' justification for initiating the search arose from their reasonable suspicion that Shields was in violation of his probation. This reasonable suspicion was based on Sergeant Whitehorn's receipt of what he considered to be reliable information and was enhanced by facts observed by the officers corroborating that information. These corroborating facts included Shields's apparently evasive conduct in not answering the phone calls or the initial knocks on the door and the presence of the gray Pontiac Fiero in front of the apartment building. Such information is sufficient to form the basis of reasonable suspicion. Vailes, supra.
(4) The place in which the search was conducted: The search took place at 254 Wyandotte, the address Shields had given to Agent Westby as his residence only three days before. In light of the reported destination of Shields and the cocaine at the 200 block of Wyandotte, a search of his residence was appropriate.
Finally, we address Shields's contention that the search for a probation violation was merely a subterfuge for a criminal investigation. Sergeant Whitehorn testified that when the informant contacted him, there was no ongoing investigation of Shields. Indeed, upon receiving the information, Sergeant Whitehorn had to perform a criminal history check in order to find out if Shields was on probation. Moreover, the search of Shields's residence was conducted by probation officers only. Although Sergeant Whitehorn and an officer from the Drug Enforcement Agency were called out by the probation officers to the residence, they arrived after the search had yielded the evidence. By this time, Shields had already been Mirandized and placed under arrest by the probation officers. Given these facts, the trial judge was correct in concluding that the search for a probation violation was not a subterfuge for a criminal investigation. See State v. Shrader, 593 So.2d 457 (La.App.2d Cir.), writ denied 598 So.2d 353 (1992); Epperson, supra.
Considering the events and circumstances resulting in the discovery of the cocaine, we find no merit in Shields's contention that the trial court erred in failing to grant the motion to suppress the physical evidence seized at the apartment.

EXCESSIVENESS OF SENTENCE
In his second assignment of error, Shields contends that the sentence imposed by the trial court exceeds the Louisiana Sentencing Guidelines and constitutes excessive, cruel, and unusual punishment.
*1285 After Shields was found guilty of possession of cocaine in an amount exceeding 200 grams, the State filed a second felony offender bill of information based on his prior conviction for possession of stolen property. Following a multiple offender hearing, Shields was adjudicated a second felony offender pursuant to La.R.S. 15:529.1. The trial judge imposed a sentence of 50 years at hard labor all of which is to be without benefit of probation or suspension of sentence in accordance with the multiple offender statute, including 10 of those years to be served without benefit of parole pursuant to R.S. 40:967G. Within the time limit prescribed by C.Cr.P. art. 881.1, Shields filed a motion to reconsider sentence which was promptly denied.
La.R.S. 40:967F(1)(b) provides that the penalty for possession of more than 200 grams, but less than 400 grams, of cocaine is a minimum of 10 and a maximum of 30 years at hard labor and a fine of not less than $100,000 nor more than $350,000. Section G of the statute further provides that the offender shall not be eligible for suspension of sentence, probation, or parole prior to serving the minimum sentence.
The habitual offender statute provides that upon conviction of a second felony offense, the defendant shall be sentenced to imprisonment for a term not less than one-half the longest term and not more than twice the longest term prescribed for the conviction. La.R.S. 15:529.1A(1). Thus, under the habitual offender law, the statutory penalty for the instant offense is a minimum of 15 and a maximum of 60 years at hard labor. Section G of this statute further provides that any sentence imposed under the habitual offender law shall be without benefit of suspension or probation.
That part of the sentence imposing 50 years at hard labor upon Shields falls clearly within the permissible statutory limits. Similarly, the imposition of 10 of those years without benefit of parole also falls within the statutory limits. Although the habitual offender statute mandates the imposition of restrictions on sentence suspension and probation only, additional restrictions may be imposed on the sentence provided those additional restrictions are provided in the underlying statute. State v. Richard, 550 So.2d 300 (La.App. 2d Cir. 1989) (citing by analogy State v. Bruins, 407 So.2d 685 (La.1981)). The underlying statute in this case, R.S. 40:967G, provides that 10 years of the sentence is to be imposed without benefit of parole. Section G of the habitual offender statute simply limits the judge's discretion to suspend or probate a sentence imposed upon an habitual offender. State v. Richard, supra. Thus, the sentence imposed upon Shields by the trial court falls within the permissible statutory limits. See also State v. Demouchet, 595 So.2d 389 (La.App. 3d Cir. 1992); State v. Caston, 477 So.2d 868 (La. App. 4th Cir.1985).
The trial judge correctly noted that the new sentencing guidelines are applicable to this case pursuant to La.C.Cr.P. art. 894.1. Section 309B of the guidelines provides the method for determining the appropriate sentence following a R.S. 15:529.1 habitual offender adjudication:
Any person who has been convicted of a felony and adjudged an habitual offender shall receive an enhanced penalty as provided by R.S. 15:529.1, the Habitual Offender Law. In such cases, the enhanced sentence may exceed the maximum sentence range specified in the appropriate cell in the sentencing grid. In such cases, the court should impose the minimum sentence provided by law unless aggravating circumstances justify imposition of a more severe sentence.
Hence, in the absence of aggravating circumstances, the appropriate sentence under § 309 would be the minimum allowed under R.S. 15:529.1 or 15 years at hard labor without benefit of probation or suspension of sentence and 10 of which to be without benefit of parole.
In the instant case, the trial judge noted several aggravating circumstances. Based upon Sergeant Whitehorn's testimony that Shields had revealed several sources for the supply of cocaine, including a Houston connection, the trial judge concluded that Shields had acted in concert with others as *1286 part of a drug ring. See La.S.G. § 209B(13). Further, the judge noted that Shields's offense was a controlled dangerous substance offense and that Shields obtained substantial income from ongoing drug activities, citing Shields's post arrest statement to Sergeant Whitehorn that he trafficked 250 grams of cocaine per week. According to Sergeant Whitehorn, who was qualified as an expert in the field of narcotics trafficking in Northwest Louisiana, this translates into a weekly income of $25,000. See La.S.G. § 209B(15). The judge also noted that Shields had been arrested on five previous occasions for drug offenses and had a number of misdemeanor violations as well. See La.S.G. § 209B(12). Finally, the trial judge concluded that Shields had perjured himself at trial and had shown no remorse for his crime. See State v. Kennon, 591 So.2d 757 (La.App. 2d Cir. 1991) (denial of offense is an "aggravating factor" and is a "legitimate and proper consideration" of the sentencing court).
The judge also considered each of the mitigating circumstances listed in the guidelines and found them to be inapplicable. He did note, however, that Shields had completed high school and had attended a vocational school for some time. He further noted that Shields is the father of two children, one of whom was born after his arrest in the present matter.
In reviewing the excessiveness of a sentence, we first review the record to see if the sentencing court took into consideration the sentencing guidelines of La. C.Cr.P. art. 894.1. On the face of this record, we are satisfied that the trial judge did indeed take cognizance of the guidelines. After noting that § 309 called for the minimum sentence allowable under R.S. 15:529.1, the trial judge chose to depart from the designated sentence, as expressly permitted by § 209 of the guidelines. Nonetheless, when departing, the court must pronounce a sentence which is proportional to the seriousness of the offense and the offender's criminal history. § 209A(4)(a).
Having found that the trial court did indeed take the guidelines into consideration, and was justified in departing therefrom, we must now determine whether the sentence is constitutionally excessive. Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. Art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Riley, 587 So.2d 130 (La.App. 2d Cir.1991). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); Riley, supra. A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983).
Shields's sentence approaches the statutory maximum for this offense. Generally, maximum sentences are appropriate only in cases involving the most serious violations of a given offense and the most egregious and blameworthy of offenders within a class. State v. Jones, 398 So.2d 1049 (La. 1981); Riley, supra.
The trial judge went into great detail concerning Shields's previous drug related arrests:
I would also note that Mr. Shields has been involved in a series of criminal offenses in Bossier and Caddo Parish over the past three or four years. I would note thatI could only guess that Mr. Shields thinks that nobody is going to figure all this out. But it's all a matter of public record and it doesn't take a brain surgeon, doesn't take a rocket scientist to go to the public record and review the records and find out a little bit about him. It's all public record and I would note that four or five of these cases have been presented in this court in the First Judicial District Court. (R.p. 532).
*1287 After reciting the specifics of each arrest, the judge further stated:
There comes a point when the criminal justice system has had enough. I think we are at that point, Mr. Shields. I suppose that that thought might have occurred to the defendant that none of this would ever catch up with him, but again I note it's all public record and it doesn't take any brilliant scholar to gather these records and find out what these records indicate. (R.p. 537-38).
Generally, under the felony sentencing guidelines, only the defendant's prior criminal convictions, not arrests, are counted. § 205. Nonetheless, the sentencing court may use prior similar criminal offenses as an aggravating factor if they have not already been considered as criminal history or as part of a multiple offender adjudication. § 209B(12). In order to use unadjudicated prior criminal offenses, however, the record must show, by a preponderance of the evidence, guilt of the prior offenses. See C. Joseph, B. Boudreaux, C. Lindsay & M. Menezes, Louisiana Sentencing Guidelines Manual 29-30 & fn. 184 (1993 ed.) (citing McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); United States v. Lee, 818 F.2d 1052 (2d Cir.), cert. denied 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987); United States v. Blanco, 888 F.2d 907 (1st Cir. 1989)). Here, the court merely had evidence of prior drug arrests and no evidence of actual guilt. Thus, it should not have considered defendant's prior arrests as an aggravating factor.
The fact is that Shields was not even brought to trial on any of the drug related arrests mentioned by the judge. Indeed, Shields has no previous drug related conviction. His only prior felony conviction is the conviction for possession of stolen property valued at more than $100 but less than $500.
Considering the other aggravating factors in this case, we agree with the trial judge that this defendant deserves a stiff sentence. However, under the circumstances of this case, a sentence of 50 years at hard labor shocks our sense of justice.
In Riley, supra, the defendant was convicted of possession of more than 400 grams of cocaine, a higher grade offense than that committed by Shields. The trial court imposed a sentence of 25 years at hard labor and a fine of $250,000. This court vacated the sentence and remanded for resentencing, noting that the highest sentence we could affirm would be 20 years. Although the defendant in Riley was a first felony offender, we find this sentence instructional in the present case.
Therefore, we vacate the sentence and remand the case for resentencing. The facts of this case lead us to conclude that the highest sentence we could affirm would be 40 years without benefit of probation or suspension of sentence and 10 of which would be without benefit of parole.
CONVICTION AFFIRMED; SENTENCE VACATED AND CASE REMANDED FOR RESENTENCING.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, VICTORY and BROWN, JJ.
Rehearing denied.
NOTES
[1] Shields's apartment was one of four located in the apartment building at 254 Wyandotte. The door of each apartment opened into a common hallway which led to the building's exterior door.