772 So.2d 281 (2000)
STATE of Louisiana, Appellee,
v.
Marlin ODOM, Appellant.
No. 34,054-KA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2000.
*284 Louisiana Appellate Project by Carey J. Ellis, III, Counsel for Appellant.
Richard Ieyoub, Attorney General, Don M. Burkett, District Attorney Richard Z. Johnson, Jr., Assistant District Attorney, Counsel for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
STEWART, J.
The defendant, Marlin Odom, was charged with possession of methamphetamine with the intent to distribute, a violation of La. R.S. 40:967(A). Subsequently, a jury convicted the defendant of the responsive verdict of possession of a controlled dangerous substance, Schedule II, methamphetamine. Thereafter, the defendant was adjudicated as a second felony offender, and the trial court sentenced the defendant to serve seven and one-half years imprisonment at hard labor. This appeal followed. We hereby affirm the defendant's conviction and sentence.

FACTS
The defendant was placed on probation on December 3, 1998 for his plea of guilty to two counts of possession of methamphetamine. He was a new probationer in Probation and Parole Officer Alan Castillo's assigned area. Castillo reviewed the defendant's records and determined that the defendant's residence needed to be cleared of any guns or drugs. Castillo also had information from Sergeant Horace Womack of the DeSoto Parish Narcotics Task Force that the defendant was recently involved with drug use or trafficking. This information was based upon Womack's reliable information and years of experience.
Between seven and eight o'clock on the evening of December 11, 1998, Castillo visited the defendant at the defendant's residence located in Logansport, DeSoto Parish. Probation and Parole Officer Jay Ingram and Sergeant Womack accompanied Castillo on the probation visit. Castillo and Ingram were assisting Womack with serving search warrants, and Womack was assisting them with the execution of parole warrants. The Probation and Parole Department was required to assist the narcotics department whenever help was requested. Although Castillo usually made his routine probation visits alone, he often took other probation and parole officers with him as a precautionary measure.
Castillo knocked on the defendant's door, and the defendant allowed the three officers to enter his residence. Castillo introduced himself to the defendant as his probation and parole officer. He advised the defendant that he was there to look around the house for any firearms and narcotics, and to remove any firearms or drugs that were found. The defendant indicated that he understood and agreed to the search.
Castillo remained with the defendant in the kitchen area. Ingram and Womack entered the defendant's bedroom, where they saw methamphetamine in plain view on the defendant's bedroom dresser. Castillo *285 placed the defendant under arrest. The officers then made an extensive search of the defendant's residence. Several bags of marijuana were found in a Crown Royal bag in the defendant's closet, and Castillo found a bag of marijuana in the refrigerator. Also found in the defendant's residence were a scanner and some drug paraphernalia, including a straw, powdered vitamin B12, and some scales. The defendant had cash on his person in the amount of $463.00. He stated that the marijuana was used by a friend. The defendant admitted, however, that he used the methamphetamine. No guns were found in the home.
Subsequently, the defendant was charged with possession of methamphetamine with the intent to distribute. The defense filed a motion to suppress the physical evidence and oral statements made by the defendant. A hearing on the motion to suppress was held on September 13, 1999. Castillo testified as to the facts surrounding the probation and parole visit to the defendant, and resultant search and seizure of drugs and related evidence. The motion to suppress was denied. After a trial by jury, the defendant was convicted of the responsive verdict of possession of a controlled dangerous substance, Schedule II, methamphetamine.
On January 13, 2000, the defendant filed a motion for new trial, which was denied. He then filed a motion to suppress the prior conviction as a predicate offense for the prosecution as a habitual offender, and to quash said prosecution. The defendant was charged by a habitual offender bill as a second felony offender, a hearing was conducted, and the matter was taken under advisement. On February 17, 2000, the defendant was adjudicated a second felony offender, and sentenced to serve seven and one-half years at hard labor. The sentence was ordered to run consecutively with the defendant's other sentences. The defendant made an oral motion to reconsider the sentence, which was denied on March 7, 2000. The defendant now appeals.

DISCUSSION

Motion to Suppress
By assignment of error, the defendant argues that the trial court erred by failing to grant his motion to suppress the physical evidence, and by allowing the use of evidence derived from the search and seizure to be entered into evidence even though the narcotics officers failed to produce a search warrant. The defendant contends that his parole officer, Castillo, did not have any first hand knowledge of a possible parole violation. He also asserts that there was no evidence produced regarding a confidential informant or other information which formed a basis for the investigation of a parole violation. The defendant argues that, in light of the total circumstances, the parole officer could not have believed that the search was necessary in the performance of his duties. He contends that the warrantless search of his residence was instigated and conducted by narcotics officers without reasonable suspicion, and was a subterfuge for a police investigation lacking in probable cause.
Probationers and parolees occupy essentially the same status. See State v. Shields, 614 So.2d 1279 (La.App. 2d Cir. 1993), writ denied (La.1993), 620 So.2d 874.
This court summarized the applicable law in State v. Wesley, 28,941 (La. App.2d Cir.12/13/96), 685 So.2d 1169, writ denied, 97-0279 (La.10/10/97), 703 So.2d 603:
A parolee has a reduced expectation of privacy which allows intrusions of his person and residence by his parole officer. State v. Vailes, 564 So.2d 778 (La. App. 2d Cir.1990) (citations omitted). The reduced expectation of privacy is a result of the parolee's agreement to report to a parole officer and to allow that officer to investigate his activities in order to confirm compliance with the provisions *286 of his parole. State v. Vailes, supra.

A parole officer's powers, however, are not without some restraints. A parole officer may not use his authority as a subterfuge to help another police agency which desires to conduct a search but lacks the necessary probable cause. The parole officer must believe that the search is necessary in the performance of his duties and reasonable in light of the total circumstances. In determining the reasonableness of a warrantless search of a parolee and his residence, the court must consider: (1) the scope of the particular intrusion; (2) the manner in which the search was conducted; (3) the justification for initiating the search; and (4) the place it was conducted. State v. Vailes, supra (citations omitted).
In State v. Vailes, supra, the probation officer had received information from a narcotic officer and a confidential informant that the defendant was possibly selling drugs out of and keeping weapons in his home. A search of the home revealed a shotgun in plain view in a bedroom and a rifle and other spare weapon parts on a table in a garage. The court concluded that this warrantless search was a reasonable exercise of the probation officer's authority. See also State v. Shields, supra.

It is an appropriate function of a parole officer to conduct unannounced, random checks on parolees. A parolee agrees to submit to such unannounced visits from his parole officer as a condition of parole. State v. Wesley, supra.
While the decision to search must be based on something more than a mere hunch, probable cause is not required, and only a reasonable suspicion that criminal activity is occurring is necessary for a probation officer to conduct the warrantless search. State v. Epperson, 576 So.2d 96 (La.App. 2d Cir.), writ denied, 580 So.2d 920, (La.1991) citing State v. Malone, 403 So.2d 1234 (La.1981). See also State v. Durr, 28,197 (La.App.2d Cir.6/26/96), 677 So.2d 596 and State v. Thomas, 96-2006 (La.App. 4th Cir.11/06/96), 683 So.2d 885.
In State v. Shields, supra, this court found that the search for a probation violation was not a subterfuge for a criminal investigation where there was no ongoing investigation of the defendant at the time the informant reported a possible probation violation. It was also noted that the search of the residence was conducted by probation officers only.
This court noted in State v. Wesley, supra, that the search of the parolee's residence was not a subterfuge for a police investigation. The parole officers testified that they often conducted routine visits or checks on parolees and that they called the sheriffs office for back up only when they encountered suspected criminal activity. Also, in State v. Shrader, 593 So.2d 457 (La.App. 2d Cir.), cert. denied, 598 So.2d 353 (La.1992), this court found that a warrantless search conducted by a parole officer, and based on reasonable suspicion, was not a subterfuge for a criminal investigation. The parole officer explained that it was departmental policy to have assistance when a probation officer intended to search or to effect an arrest. This court did not find it unreasonable that the probation officer sought assistance from the sheriffs department, given the dangers attendant to such a confrontation. It was also noted that there was no evidence contradicting the parole officer's testimony that he initiated the visit and searched the defendant's premises in order to ensure the defendant's compliance with the terms of his parole.
In the instant case, Castillo, the defendant's probation officer, testified that he was making a routine visit to the defendant when the search was conducted. As a probationer, the defendant had a reduced expectation of privacy which allowed such an intrusion of his person and residence by his parole officer. State v. *287 Vailes, supra. We believe that it was an appropriate function of Castillo, as a probation officer, to conduct an unannounced, random visit to the defendant, and to search his residence for firearms and drugs, especially in light of the fact that the defendant was a new probationer assigned to Castillo's area. See State v. Wesley, supra; State v. Shields, supra.
The record also supports the conclusion that Castillo had a reasonable belief that the search was necessary in the performance of his duties and was reasonable in light of the total circumstances. The defendant was a new probationer in Castillo's area, and Castillo had received information that the defendant was recently involved with drug use or trafficking. The visit was conducted in a reasonable manner, with Castillo requesting entry from the defendant, introducing himself as his probation officer, and announcing his intent to inspect the residence for firearms and drugs. The defendant allowed the officers to enter his residence and consented to a search of his residence. When Ingram, the other probation officer, and the narcotics officer saw the methamphetamine in plain view on the defendant's bedroom dresser, the defendant was then placed under arrest. As such, we believe that the probation officer's subsequent, more extensive search of the defendant's residence was a reasonable exercise of the probation officer's authority.
It is clear from the record that the search conducted by the probation officer was not a subterfuge to help the narcotics department conduct a search without the necessary probable cause. There was no evidence of an ongoing investigation of the defendant at the time the probation officer was notified of the defendant's illegal activity. Also, the search was conducted by the two probation officers, albeit in the presence of the narcotics officer. Additionally, Castillo testified that he often took other probation and parole officers with him as a precautionary measure, and that his department was required to work with the narcotics officers upon request. The record reflects that such cooperative work arrangements were used when warrants were being served to ensure the safety of the officers of both organizations. This is similar to the situations in State v. Wesley, supra, and State v. Shrader, supra, wherein the searches made by parole officers with assistance from law enforcement agencies were found not to have been a subterfuge. Finally, Castillo's testimony at the hearing on the motion to suppress regarding the probation visit and related search was not disputed by any other testimony or physical evidence. Thus, the defendant's contention that the search conducted by the probation officer was a subterfuge to help the narcotics department conduct a search without the necessary probable cause is without merit. Since the warrantless search of the defendant's residence by the probation officer was a reasonable exercise of the probation officer's authority, and was not a subterfuge to help the narcotics department, the trial court did not err in denying the defendant's motion to suppress the evidence seized during the search. This assignment of error has no merit.

Habitual Offender Law
By assignment of error, the defendant asserts that during the multiple offender proceeding, the trial court failed to advise him of his right to remain silent and his right to have a hearing. The defendant, however, concedes in brief that a contradictory hearing was conducted and that he did not testify. Therefore, the defendant concludes that he suffered no adverse effects to his substantial rights and that the omissions were harmless.
In a habitual offender proceeding, the state is required to prove only a prior felony conviction and that the defendant is the person convicted of the earlier offense. State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writs denied, *288 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.6/26/98), 719 So.2d 1048; State v. Johnson, 31,448 (La.App.2d Cir.3/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), 749 So.2d 653, cert. denied, ___ U.S. ___, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).
Before accepting a defendant's admission that he is a multiple offender, the trial judge must specifically advise the defendant of his right to a formal hearing, his right to require the state to prove his identity as a multiple offender, and his right to remain silent. La. R.S. 15:529.1(D); State v. Johnson, 432 So.2d 815 (La.1983), appeal after remand, (La. App. 1st Cir.10/09/84), 457 So.2d 1251, appeal after remand, (La.App. 1st Cir.6/25/85), 471 So.2d 1041; State v. Coleman, 96-525 (La.App. 3d Cir.10/07/98), 720 So.2d 381; State v. Manning, 30-809 (La. App.2d Cir.6/24/98), 715 So.2d 668.
A trial court's failure to properly advise a defendant of his rights under the Habitual Offender Law constitutes patent error on the face of the record and requires that the habitual offender's adjudication and sentence be vacated. State v. Fox, 98-1547 (La.App. 1st Cir.6/25/99), 740 So.2d 758.
This court has held that the trial court committed harmless error by failing to read the habitual offender bill of information in court and failing to inform the defendant of his right to remain silent at habitual offender hearings, where the defendant exercised his right to remain silent, had a full evidentiary hearing, and was well aware of the convictions being used against him. State v. Bush, 31,710 (La.App.2d Cir.2/24/99), 733 So.2d 49, writ denied, 99-1010 (La.9/3/99), 747 So.2d 536, reconsideration denied, 99-1010 (La.10/29/99), 748 So.2d 1156; State v. Stewart, 27,049 (La.App.2d Cir.5/10/95), 656 So.2d 677, writ denied, 95-1764 (La.12/08/95), 664 So.2d 420.
The defendant was charged as a habitual offender under La. R.S. 15:529.1. The record reflects that the defendant had a habitual offender hearing on January 31, 2000. Therefore, his right to a hearing was protected. Contrary to the defendant's assertion, the transcript of that proceeding verifies that the defendant was advised of his right to remain silent at the habitual offender hearing. The defendant was also advised that the state has the burden of proving that he is a habitual offender. Therefore, there is no error patent on the record regarding these claims. La. R.S. 15:529.1(D); State v. Johnson, 747 So.2d 61; State v. Manning, supra; State v. Fox, supra; State v. Coleman, supra. Additionally, even if the defendant had not been advised of his right to remain silent, the state correctly notes in brief that such an error would be harmless because the defendant did not testify at the hearing. See State v. Bush, supra; State v. Stewart, supra. This assignment of error is without merit.

Post-Conviction Relief Prescriptive Period
By assignment of error, the defendant argues that an error patent occurred after sentencing in that the trial court offered incorrect information to the defendant regarding the prescriptive period for filing post-conviction relief proceedings, stating that the period was three years rather than two years. After sentencing, the trial court advised, "... he has three years from the date that his convictions and sentence is final in which to apply for Post-conviction Relief."
La.C.Cr.P. art. 930.8 was amended in 1999 to reflect a prescriptive period of two years, and a prescriptive period of three years for those applications filed on or before October 1, 2001. The prescriptive period does not begin to run until the judgment is final under La.C.Cr.P. art. 914 or 922. Thus, prescription has not yet begun to run. State v. Harvey, 26,613 (La.App.2d Cir.1/25/95), 649 So.2d 783, writ denied, 95-0430 (La.6/30/95), 657 So.2d 1026, writ denied, 95-0625 *289 (La.6/30/95), 657 So.2d 1028; State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992). Therefore, we instruct the trial court to send appropriate written notice to the defendant within ten days of the rendition of this opinion and to file proof of the defendant's receipt of such notice in the record of the proceedings.

Sufficiency of the Evidence
By assignment of error, the defendant contends that there was insufficient evidence to convict him as a second felony offender. The defendant asserts that the state failed to introduce evidence that his prior conviction was finalized, citing State v. Lewis, 564 So.2d 765 (La.App. 2d Cir. 1990). He also argues that the prior convictions used to adjudicate him as a second felony offender were both entered on the same date. The defendant further contends that the state did not show that the cleansing period had commenced, in accordance with State v. Boykin, 29,141 (La. App.2d Cir.1/31/97), 688 So.2d 1250.

Preservation of issue for appellate review of habitual offender complaints
La. R.S. 15:529.1 D(1) governs the procedure for preserving these issues on appeal. The procedure requires the court in which the subsequent conviction was obtained to bring the offender before the court, inform him of the allegations contained in the information and of his rights, and require the offender to say whether the allegations are true. If the offender denies the allegation, refuses to answer, or remains silent, his plea or the fact of his silence is entered on the record and he shall be given 15 days to file particular objections to the information. Any challenge to the previous conviction or adjudication of delinquency not made before sentence is imposed may not thereafter be raised to attack the sentence. La. R.S. 15:529.1(D)(1)(b); State v. Jones, 29,805 (La.App.2d Cir.2/24/97), 700 So.2d 1034, writ denied, 99-2487 (La.2/18/00), 754 So.2d 961.
In order to challenge the validity of a prior conviction, the defendant is required to file a written response denying the allegations set forth in the bill of information within 15 days of arraignment. Failure of the defendant to comply with the statute prevents him from directly attacking the validity of prior offenses on appeal. State v. Jones, supra.
A new basis for an objection cannot be raised for the first time on appeal. State v. Cressy, 440 So.2d 141 (La.1983); State v. O'Neal, 501 So.2d 920, 924 (La.App. 2d Cir.), writ denied, 505 So.2d 1139 (La.1987); La.C.Cr.P. art. 841. However, this court must consider a pro se defendant's briefed assignments of error. State v. Melon, 95-2209 (La.9/22/95), 660 So.2d 466; State v. Anderson, 29,282 (La. App.2d Cir.6/18/97), 697 So.2d 651.
In this case, the defendant's counsel filed a motion to suppress and/or quash the multiple offender bill before the hearing. The motion was timely, as it was filed within 15 days after the hearing required by La. R.S. 15:529.1 D(1). However, the only particular objection raised in that motion was regarding the trial court's failure to advise the defendant of his right to counsel under La.C.Cr.P. art. 556.1. Any other challenge to the previous conviction or adjudication of delinquency not made before sentence is imposed may not thereafter be raised to attack the sentence. La. R.S. 15:529.1(D)(1)(b). Thus, the defendant's pro se claims (regarding the finality of his prior conviction, the cleansing period, and the fact that both guilty pleas were entered on the same date) are arguably new bases for objection, which cannot be raised for the first time on this appeal. However, we will consider the defendant's briefed assignments of error. Thus, out of an abundance of caution, we will address the defendant's new bases for objection to the habitual offender adjudication.

Sufficiency of the evidence regarding habitual offender adjudication
First, the defendant argues that the state failed to prove all of the elements *290 necessary to adjudicate him a second felony offender.
La. R.S. 15:529.1(D)(1)(b) provides in part that the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof.
In a habitual offender proceeding, the state is only required to establish a prior felony conviction and that the defendant is the person convicted of the earlier offense. On appeal, the sole issue to be resolved is whether evidence was introduced upon which the trial judge could find the defendant to be the same person as the previously convicted felon. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048, citing State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir. 1990).
Prima facie proof of a prior felony conviction may be established by compliance with La. R.S. 15:529.1(F) (the "pen pack" provision). However, this provision is not the exclusive method of proving a prior felony conviction; any other competent evidence may be used to establish such proof. State v. White, supra; State v. Young, 27,237 (La.App.2d Cir.8/23/95), 660 So.2d 548; State v. Hunt, 573 So.2d 585 (La.App. 2d Cir.1991); State v. Banks, 612 So.2d 822 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1254 (La.1993).
Identification of the accused may be by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared to those in the prison record introduced, or by photographs contained in the duly authenticated record. State v. White, supra; State v. Young, supra; State v. Shepherd, supra.
La. R.S. 15:529.1(D)(1)(b) further provides in relevant part:
If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
In State v. Shelton, 621 So.2d 769 (La. 1993), the Louisiana Supreme Court discussed the state's burden of proof in a habitual offender proceeding as follows:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant *291 and by the State to determine whether the State has met its burden of proving the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. (Footnotes omitted.)
State v. Rice, 31,871 (La.App.2d Cir.3/31/99), 736 So.2d 956, writ denied, 99-1314 (La.10/15/99), 748 So.2d 464.
First of all, the record reflects that in the instant case the trial court correctly found that the state met its initial burden of proving the prior felony conviction and that the defendant is the person convicted of the earlier offense. In this case, the defendant's probation officer identified the defendant as the same person whose probation he supervised in December 1998, and the same person who was found guilty of the present offense of possession of methamphetamine. The state also introduced into evidence a copy of the transcript of the guilty plea of the prior felony conviction, and a certified copy of the court minutes of that proceeding. The transcript of the sentencing was also introduced into evidence. The state therefore met its burden of proof by introduction of competent evidence regarding the prior felony conviction and the defendant's identity as the person convicted of the prior offense. State v. White, supra and State v. Shepherd, supra.
Likewise, as required in State v. Shelton, supra, and as analyzed in State v. Rice, supra, even based upon the minute entries alone, the state has met its burden of proof in the instant case of the existence of the prior guilty pleas, and that the defendant was represented by counsel when they were taken. The burden then shifted to the defendant to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the pleas. Only if the defendant meets this burden does the burden shift to the state to prove through a contemporaneously recorded transcript that the plea was voluntary and made with an awareness of its consequences. See State v. Shelton, supra; State v. Rice, supra.
Although the defendant objected to the voluntariness of the guilty plea of the prior conviction, the transcript of the guilty plea proceeding affirmatively shows that the defendant was properly advised of his Boykin rights. Since the defendant did not meet his burden of producing affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the pleas, the trial court did not err in failing to suppress the prior conviction. See State v. Shelton, supra and State v. Rice, supra. It is clear from the record that the state proved all of the elements necessary to adjudicate the defendant a second felony offender under the habitual offender statute. This argument is without merit.

Finality of prior conviction
The defendant contends in his pro se brief that the state failed to prove that his prior conviction was final, citing this court's decision in State v. Lewis, 564 So.2d 765 (La.App. 2d Cir.1990). In State v. Lewis, supra, it was held that, in applying the definition of "conviction" for purposes of the habitual offender statute, a prior conviction must be final, either having not been appealed or having been affirmed on appeal, before the subsequent offense is committed.
In State v. Mims, 566 So.2d 661 (La. App. 2d Cir.), writ denied, 569 So.2d 970 (La.1990), this court held that the defendant was properly sentenced as a habitual offender where at the time he committed his current offenses, his prior conviction was final because it had not been appealed from, even though an out-of-time appeal of that prior conviction was granted between the defendant's first sentencing and second sentencing for his current offenses. The court noted that a conviction is final either because it is not [timely] appealed or it has been affirmed on appeal. The court held that even though Mims' prior conviction was not "affirmed on appeal" until after he was re-sentenced for his current offenses, *292 the prior conviction was final because it was not appealed from when Mims committed his current offenses. Therefore, no error was found in Mims' sentencing as a habitual offender. Thus, under the rationale of Mims, supra, and Lewis, supra, a defendant's habitual offender status, under La. R.S. 15:529.1, is determined as of the time the subsequent offense is committed. State v. Dukes, 609 So.2d 1144 (La.App. 2d Cir.1992), writ denied, (La.12/15/95), 664 So.2d 435.
There is no indication that the defendant appealed his prior conviction by guilty plea. As the defendant's prior conviction was not appealed from at the time he committed his current offense, the prior conviction was final at that time. Thus, the trial court did not err when sentencing him as a habitual offender. This argument has no merit.

Two counts entered on the same day treated as one prior conviction for the habitual offender statute
The defendant also cites State v. Sherer, 411 So.2d 1050 (La.1982), which held that the defendant could not be found to be a habitual offender on each of the two counts because convictions on more than one count entered on the same date should be treated as one conviction for applying the habitual offender statute, citing State v. Schamburge, 344 So.2d 997 (La.1977), and State ex rel. James Henry Jackson v. Henderson, 283 So.2d 210 (La.1973). State v. Sherer, supra, however, has been questioned and criticized on this issue in concurring opinions in State ex rel. Thibodeaux v. Waltzer, 444 So.2d 623 (La.1984) and State v. Lennon, 427 So.2d 860 (La. 1983) and in other cases. Likewise, State ex rel. James Henry Jackson v. Henderson, supra, has been questioned on the same issue.
The supreme court in Mims v. Butler, 601 So.2d 649 (La.1992), on rehearing, found that because the defendant was convicted of two separate offenses on the same day, those offenses were to be treated as one offense for multiple offender purposes. See State v. White, 27,188 (La. App.2d Cir.8/23/95), 660 So.2d 515, writ denied, 95-3045 (La.4/25/97), 692 So.2d 1076. However, the defendant's argument on this issue is not relevant to his case, as the two prior guilty plea convictions were treated as one for purposes of the habitual offender statute. The defendant was charged as a second felony offender, with the prior conviction(s) treated as one first conviction for the first felony offense, and the present conviction treated as the second felony offense. This argument is, therefore, without merit.

Cleansing period claim
Finally, the defendant cites State v. Boykin, supra, wherein this court determined when a defendant has been adjudicated a habitual offender, the state's failure to prove the defendant's date of discharge, and thus prove that the "cleansing period" has not expired, is error patent on the face of record.
La. R.S. 15:529.1(C) provides:
This Section shall not be applicable in cases where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods.
While on probation, a person is still under the supervision of the state and is therefore in custody. State v. Tropez, 546 So.2d 1376 (La.App. 4th Cir.1989); State v. Battista, 517 So.2d 1096 (La.App. 3d Cir.1987). Furthermore, in State v. Rousselle, 514 So.2d 577 (La.App. 4th Cir. 1987), writ denied, 520 So.2d 738, (La. 1988) and cert. denied, 488 U.S. 822, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988), the court held that a prior conviction, for which the *293 defendant was still on probation, could be used to enhance the defendant's sentence upon a subsequent felony conviction, as the cleansing period would not have begun to run until the defendant was discharged from supervision. Also, where less than ten years have elapsed between convictions, it is not necessary for the state to prove discharge dates on earlier convictions in a habitual offender proceeding for purposes of determining whether the cleansing period has expired. La. R.S. 15:529.1(C); State v. Martello, 98-2066 (La.App. 4th Cir.11/17/99), 748 So.2d 1192.
On December 3, 1998, the defendant was sentenced to serve five years imprisonment at hard labor on each count, which sentences were suspended and the defendant was placed on three years supervised probation. The second felony conviction was committed on December 11, 1998. Clearly, the defendant was still on probation when he committed the second felony offense eight days after being placed on probation. Therefore, the prior conviction could be used to enhance the defendant's sentence, as the cleansing period would not have begun to run until the defendant was discharged from supervision. State v. Rousselle, supra. Also, less than ten years elapsed between the two convictions. Thus, it is not necessary for the state to prove discharge dates on earlier convictions in a habitual offender proceeding for purposes of determining whether the cleansing period has expired. La. R.S. 15:529.1(C); State v. Martello, supra. This argument is without merit.

CONCLUSION
For the foregoing reasons, we hereby affirm the defendant's conviction and sentence.
AFFIRMED.