828 So.2d 107 (2002)
STATE of Louisiana, Appellee,
v.
Steve DRANE and Terri Haralson, Appellant.
No. 36,230-KA.
Court of Appeal of Louisiana, Second Circuit.
September 18, 2002.
*109 Derrick Carson, for Appellant.
Richard Ieyoub, Attorney General, William R. Coenen, Jr., District Attorney, Penny Douciere, Johnny R. Boothe, Assistant District Attorneys, for Appellee.
Before GASKINS, PEATROSS & KOSTELKA, JJ.
PEATROSS, J.
Defendants, Steve Drane and Terri Haralson, were charged with production or manufacture of methamphetamine, a violation of La. R.S. 40:967(A)(1). Defendants were tried by a jury and convicted as charged. Both Defendants were sentenced to serve 40 years at hard labor without the benefit of probation, parole or suspension of sentence. Defendants now appeal their convictions and sentences. For the reasons stated herein, we affirm.

FACTS
As a result of a previous felony drug conviction, Defendant Terri Haralson ("Haralson") was on parole and under the supervision of the Department of Corrections at the time of her arrest on the current charge. Haralson was supervised by probation and parole officer Alyce Roper. In June 1999, Officer Roper received a telephone call from an informant she considered reliable. The informant told her that Haralson was involved in the production and use of methamphetamine. Only a short time before this call, Haralson tested positive for methamphetamine use during a drug test given by Officer Roper. Based on the informant's tip and the recent results of the drug test, Officer Roper, along with several other probation and parole officers, decided to visit Haralson at her residence. Deputies from the Franklin Parish Sheriff's Department accompanied the probation and parole officers to Haralson's residence because they possessed an arrest warrant for Steve Drane ("Drane"), who lived at Haralson's residence. The arrest warrant for Drane was for failure to pay child support.
On June 28, 1999, probation and parole officers and sheriff's deputies went to the *110 home of Defendants. The officers knocked on doors and windows of the home for approximately ten minutes, but no one answered. Eventually, the officers saw Drane in the home and announced they had a warrant for his arrest and that they would force entry into the home if necessary. Drane then answered the door and was arrested by the sheriff's deputies. The probation and parole officers then entered the residence and found Haralson hiding in a bedroom. Officer Roper told Haralson why they were there and that she would have to submit to a drug test.[1] Officer Roper performed the drug test and Haralson tested positive for methamphetamine use. The probation and parole officers then conducted an initial search of the premises, finding a large quantity of antihistamines, denatured alcohol, sulphuric acid, gas masks, rubber gloves, lithium batteries, tanks and finished product methamphetamine. The initial search was conducted by probation and parole officers only, without a warrant. Once the evidence was discovered, the Franklin Parish Sheriff's deputies were summoned to complete the search, photograph the premises and collect the evidence. A loaded. 32 caliber handgun was also found in Haralson's possession.
Defendants were arrested for manufacturing or production of methamphetamine. Haralson was also arrested for violating her parole and for possession of a firearm by a convicted felon. On November 16, 1999, Defendants were jointly charged by a bill of information with manufacturing or production of methamphetamine, a violation of La. R.S. 40:967(A)(1). A preliminary examination resulted in a finding of probable cause on the methamphetamine production charge. A motion to suppress the evidence recovered by the probation and parole officers was filed by Defendants, but was subsequently denied. A jury trial commenced on October 15, 2001. As previously stated, both Defendants were found guilty as charged of production or manufacture of methamphetamine.
A pre-sentence investigation was ordered and sentencing was scheduled for January 9, 2002. Defendants requested a continuance until January 11, 2002. At the sentencing hearing, Defendants filed a motion in arrest of judgment, which was denied. Both Defendants were sentenced to 40 years at hard labor the same day the judge denied the motion in arrest of judgment. A motion to reconsider the sentence was filed on behalf of both Defendants and denied on February 25, 2002. As part of the motion to reconsider, Defendants raised for the first time the issue of the trial court's failure to observe the 24-hour delay between the time of the denial of the motion in arrest of judgment and the sentencing. This appeal ensued.
On appeal, Defendants raise the following assignments of error:
1. The trial court erred in its denial of defendants' motion to suppress the evidence found by the probation and parole officers;
2. the trial court abused its discretion when it rendered a sentence that was constitutionally excessive;
3. the trial court erred in rendering a sentence that violated defendants' rights to equal protection under the law; and
4. the trial court erred in its failure to observe the sentencing delays found in La.C.Cr.P. art. 873.

DISCUSSION

Motion to Suppress
We begin our discussion with Defendants' motion to suppress the evidence *111 found by the probation and parole officers. As a general constitutional rule, warrantless searches are per se unreasonable under the Fourth Amendment to the U.S. Constitution. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). While a warrantless search is generally unreasonable, a person on parole or probation has a reduced expectation of privacy under the Fourth Amendment of the U.S. Constitution and under Article I, § 5, of the Louisiana Constitution. As a parolee, Haralson has a reduced expectation of privacy. It is well recognized that both probationers and parolees have a reduced expectation of privacy. This reduced expectation of privacy allows reasonable warrantless searches of the probationer's or parolee's person and residence by her probation and parole officer, even though less than probable cause may be shown. State v. Patrick, 381 So.2d 501 (La.1980); State v. Vailes, 564 So.2d 778 (La.App. 2d Cir. 1990).
An individual on probation does not have the same freedom from governmental intrusion into his affairs as does the ordinary citizen. United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001); State v. Malone, 403 So.2d 1234 (La.1981). A probationer's or parolee's reduced expectation of privacy occurs as a result of his prior conviction and the circumstance of his agreement to allow a probation or parol officer to investigate his activities in order to confirm compliance with the conditions of his probation or parole. State v. Carter, 485 So.2d 260 (La.App. 3d Cir.1986).
Even though warrantless searches by a probation or parole officer are allowed, however, courts are in agreement that the searches must not be a "subterfuge for criminal investigation." State v. Malone, supra, citing United States v. Dally, 606 F.2d 861 (9th Cir. 1979). The parole officer must believe that the search is necessary in the performance of his duties and reasonable in light of the total circumstances. State v. Odom, 34,054 (La.App.2d Cir.11/1/00), 772 So.2d 281. The Louisiana Supreme Court adopted a four-part test from the case of Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), to determine whether a warrantless search by a probation or parole officer was reasonable. State v. Malone, supra. In order to determine whether a warrantless search was reasonable, a court must consider: (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating the search, and (4) the place in which it was conducted. The State bears the burden of proving the admissibility of any evidence seized without a search warrant. State v. Shields, 614 So.2d 1279 (La.App. 2d Cir.1993), writ denied, 620 So.2d 874 (La.1993).
In the case sub judice, Haralson's reduced expectation of privacy allows for an intrusion on her person and residence by her parole officer. Officer Roper believed that an investigation and a possible arrest of Haralson might be necessary. Officer Roper had a duty to investigate the information provided to her by the informant, whom she considered reliable. Armed with the knowledge that Haralson had previously dealt narcotics and had tested positive for methamphetamine only a short time before the informant's tip, Officer Roper's responsibility was to commence an investigation of Haralson. Officer Roper's unannounced visit to Haralson's residence should not have been unexpected. Probation and parole officers have a duty to conduct unannounced random checks on probationers and parolees. As already established in the jurisprudence of this Court, it is proper for a parolee to agree to submit to such unannounced *112 visits from his parole officer as a condition of parole. State v. Wesley, 28,941 (La.App.2d Cir.12/13/96), 685 So.2d 1169, writ denied, 97-0279 (La.10/10/97), 703 So.2d 603.
A reasonable suspicion that criminal activity is occurring is necessary for a probation officer to conduct the warrantless search. State v. Epperson, 576 So.2d 96 (La.App. 2d Cir.1991), writ denied, 580 So.2d 920 (La.1991), citing State v. Malone, supra. The information from the informant gave Officer Roper the reasonable suspicion that Haralson was dealing narcotics again and, thus, violating the conditions of her parole. Further, Officer Roper's decision to allow other probation and parole officers to join her in the investigation was not a subterfuge for a police investigation. The officers served only to back up Officer Roper, providing officer safety and protecting all parties from possible harm. Likewise, the decision to allow deputies from the Franklin Parish Sheriff's office to accompany the probation and parole officers to Haralson's residence was not a subterfuge for a police investigation. Officers from other law enforcement agencies routinely accompany probation and parole officers to provide back up assistance. In this instance, the sheriff's office was also attempting to execute a valid arrest warrant on Drane. This is clearly not a subterfuge for a police investigation.
In applying the four-part test from Bell v. Wolfish, supra, we find that the trial court was correct in dismissing Defendants' motion to suppress. First, the scope of the particular intrusion was appropriate. The initial search was done by probation and parole officers, in their official capacity of investigating possible criminal activity by one of their parolees, only after receiving a credible tip and only after Haralson tested positive for methamphetamine use. Second, the manner in which the search was conducted was appropriate. The initial search did not commence until after Haralson tested positive for methamphetamine use and the search was conducted only by probation and parole officers, who had the duty to investigate whether Haralson was involved in criminal activity. Third, the justification for initiating the search was appropriate. Officer Roper commenced the search based on a credible informant's tip and on the two positive drug tests of Haralson. Also, Haralson and Drane refused to answer the door until forced entry into the home was threatened by an officer. In addition, Haralson was found hiding in a bedroom. All these factors combined justified initiating a search. Finally, we examine the place the search was conducted. The search was conducted at Haralson's residence. While the home is a sacred venue for people, as previously stated, a warrantless search of the home of a parolee can be conducted by a parole officer if the officer has a reasonable suspicion that criminal activity is occurring. See State v. Malone, supra. Officer Roper had such reasonable suspicion through the informant's tip, coupled with Haralson's positive drug tests. The search of Haralson's home was also a reasonable exercise of Officer Roper's authority. She had the proper suspicions to perform a more thorough search and we conclude that the search was reasonable in light of the total circumstances.
Next, we find that the arrest of Drane was not a subterfuge for a criminal investigation. The Franklin Parish Sheriff's deputies had a valid arrest warrant for Drane. The sheriff's deputies did not participate in the initial search of Haralson's residence. Drane was living in the home of a parolee, so he also had a reduced expectation of privacy, knowing that Haralson's residence was subject to searches *113 by her parole officer. The trial court did not err in denying Defendants' motion to suppress the evidence seized during the search of Haralson's residence. This assignment of error is without merit.

Excessive Sentence
In 1999, at the time Defendants committed the current offenses, La. R.S. 40:967 provided for a sentence of not less than 40 years and not more than 99 years at hard labor for manufacturing methamphetamine. In 2001, the legislature amended the penalty provision for manufacturing methamphetamine to not less than 10 and not more than 30 years. Irrespective of the amendment, the Louisiana Supreme Court has consistently held that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, citing State v. Wright, 384 So.2d 399 (La.1980). A defendant must be sentenced according to sentencing provisions in effect at the time of the commission of the offense. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983).
The supreme court has stated that an ameliorative change in the penalty provision of a statute, which occurs after the commission of the offense, is a factor that can be weighed by the trial judge in imposing a sentence. State v. Clark, 391 So.2d 1174 (La.1980). The supreme court further noted, however, that it is the law in this state that the penalty provision in effect at the time of the offense is the applicable provision that must be followed. The trial judge should consider the amendments to the law, but he should not derogate from the penalty in effect at the time of the commission of the offense. Further, the legislature specifically stated in the 2001 amendment to La. R.S. 40:967 that the amendment would have prospective effect only. If the legislature had wanted the amendment to be retroactive, it would have stated as much.
In fact, the legislature has dictated that no section of the Revised Statutes is retroactive unless it is expressly so stated in the statute. La. R.S. 1:2.[2] In the instant case, the trial judge had no choice but to impose a sentence that was in effect at the time Defendants committed the charged offenses. As stated in State v. Sugasti, supra, policy reasons dictate that the amendments should not apply retroactively because it would encourage defendants to continually delay prosecution hoping that the legislature would enact more lenient sentences. It would also be fundamentally unfair, as different defendants could commit the same crime on the same day, but could receive different penalties if one defendant was able to successfully delay his sentencing until after a statute had been amended. Based on State v. Sugasti *114 and its progeny, we find Defendants' cited cases, State v. Warren, docket no. 1999 f 209 (Ex. 1) and State v. Gibson, docket no. 1999 f 206 (Ex. 2), to be unpersuasive. The trial judge correctly imposed the sentence that was in effect at the time Defendants committed the charged offenses.
Regarding the excessiveness of Defendants' sentences, the test imposed by a reviewing court in determining such excessiveness is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. Contrary to Defendants' contentions on appeal, we find that the record demonstrates that the trial court adequately considered the requisite guidelines.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La. App.2d Cir.4/2/97), 691 So.2d 864.
A trial court has broad discretion to sentence within the statutory limits. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of that discretion, a reviewing court may not set aside a sentence. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
Defendants were both sentenced to 40 years at hard labor. The sentence was the minimum sentence that could be given under the law in effect at the time of the commission of their offenses. A trial court does indeed have broad discretion to sentence within the statutory limits. A minimum sentence compelled by Louisiana law is presumed not to be excessive or violative of the guidelines. State v. Juarez, 624 So.2d 26 (La.App. 2d Cir.1993). Important elements which should be considered during sentencing are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988), State v. Bradford, supra. The trial court, in the case sub judice, thoroughly examined these factors and gave Defendants the minimum sentence under the sentencing guidelines. It committed no error in making this determination. Haralson had already been convicted of one drug felony and was on parole. Drane had several misdemeanor offenses of which he had already been convicted. Drane is also being held for numerous felony drug related charges on which he was arrested during the time he was awaiting trial in the instant case. Considering the history of both Defendants, the sentence is neither grossly disproportionate to the severity of the offense nor shocking to our sense of justice. On this record, we do not find sentencing error. The sentence imposed, *115 therefore, is not constitutionally excessive. This assignment of error has no merit.

Equal Protection
All people are afforded equal protection of the law. U.S. Const. amend. XIV. This court stated in State v. Edwards, 35,744 (La.App.2d Cir.2/27/02), 811 So.2d 233, that, in order for a defendant to prove a violation of the equal protection clause, he must show that the judge acted with discriminatory intent or purpose. Intent in some cases may be inferred from a clear pattern unexplainable on grounds other than some inappropriate classification such as race. McCleskey v. Kemp, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). No such discriminatory intent is found in this case. Also, no discriminatory intent can be inferred from the trial court's sentencing of Defendants. Further, the cases cited by Defendants are once again unpersuasive, as those cases are factually distinguishable and irrelevant to the issues in the case sub judice. The trial court sentenced Defendants to the statutorily mandated minimum sentence of 40 years at hard labor for their conviction of manufacturing methamphetamine. Here, no discrimination can be shown because Defendants were given the minimum sentence. Defendants' assertion that they were denied equal protection of the law in this case is without merit. 
Sentencing Delays
On January 11, 2002, Defendants filed a motion in arrest of judgment. This motion was denied that day and Defendants were subsequently sentenced on the same day. La.C.Cr.P. art. 873 states:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
In the case at hand, the trial court did not observe the 24-hour delay and Defendants did not waive the delay. In State v. Keleman, 444 So.2d 1328 (La.App. 2d Cir. 1984), writ denied, 447 So.2d 1069 (La. 1984), however, this court stated that, absent a showing that defendant was prejudiced by the failure to observe this delay, the court is not required to remand the case for resentencing. The supreme court further emphasized this point by stating this is even more true where a substantial amount of time has passed between the trial and sentencing. State v. White, 404 So.2d 1202 (La.1981). In White, the supreme court also stated that the 24-hour delay was not so imperative as to require a resentencing where the defendant could not show that he suffered prejudice from the violation.[3] In State v. Keleman, supra, the verdict was rendered on December 9, 1982, and sentencing was originally set for December 28, 1982, but was delayed on request of defendant's counsel, as in the instant case. Actual sentencing occurred on January 4, 1983, at which time the defendant moved for a new trial. The motion for a new trial was overruled and sentencing occurred immediately thereafter on the same day. Under those circumstances, the court in Keleman said that the sentencing without delay would not compel a remand.
Likewise, in the instant case, Defendants were not prejudiced by the court's *116 failure to observe the delay. The case of State v. Shaw, 00-1051 (La.App. 5th Cir.2/14/01), 785 So.2d 34, writ denied, 01-0969 (La.2/8/02), 807 So.2d 861, cited by Defendants, is distinguishable from our case. In Shaw, the State acquiesced both to the notion that the trial court failed to observe the delay and the proper remedy was to remand the case to the trial court for resentencing. The State concedes no such result in this case.
In State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997), the Louisiana Supreme Court cited State v. White, stating that, "absent a showing that prejudice resulted from the failure to afford the statutory delay, reversal of the prematurely imposed sentence is not required." In the case at hand, no prejudice resulted from the failure of the trial court to comply with the 24-hour delay. Defendants were given the minimum sentence and have failed to show any prejudice.
Furthermore, La.C.Cr.P. art. 921 states:
A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.
The substantial rights of Defendants were not affected by the trial judge's decision not to follow the 24-hour delay found in article 873. We find that the failure was harmless error; and we further find, therefore, that this assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the convictions and sentences of Defendants Terri Haralson and Steve Drane are affirmed.
AFFIRMED.
NOTES
[1] Persons on probation or parole must submit to random drug tests.
[2] In only one instance has an amended sentencing statute been held to apply retroactively. At the same time the legislature amended La. R.S. 40:967, the statute relating to driving while intoxicated was also amended. The driving while intoxicated statute, La. R.S. 14:98, states that the defendant shall be sentenced to a specific term "upon conviction" and not upon the commission of the offense. This language establishes that a court will sentence a person according to the law in effect at the time the person is convicted of the crime and not when he committed the offense. Moreover, the legislature stated its intention to prefer treatment measures in driving while intoxicated cases over incarceration. In State v. Mayeux, 01-3195 (La.6/21/02), 820 So.2d 526, the Louisiana Supreme Court found that, based on the language used in the new statute, the new La. R.S. 14:98 provided a sort of quasi retroactive relief to those convicted of driving while intoxicated.
[3] In 1990, the supreme court decided State v. Augustine, 555 So.2d 1331 (La.1990). In Augustine, the supreme court stated that, if a trial court imposes a sentence without following the 24 hour delay, then the sentence is void. The decision in Augustine, however, does not expressly overrule the decision found in State v. White, supra.