900 So.2d 313 (2005)
STATE of Louisiana, Appellee
v.
William PERRY, Appellant.
No. 39,644-KA.
Court of Appeal of Louisiana, Second Circuit.
April 13, 2005.
*315 G. Paul Marx, Louisiana Appellate Project, for Appellant.
Walter E. May, Jr., District Attorney, James R. Hatch, Assistant District Attorney, for Appellee.
Before BROWN, MOORE, and LOLLEY, JJ.
BROWN, C.J.
On November 19, 2002, while driving in Homer, Louisiana, William "Junior" Perry, who was on parole from a prior drug conviction, was stopped for a seatbelt violation. The officer checked the registration of the car and criminal history of both Perry and his passenger, David Marcus Hicks. The vehicle was registered in Arkansas to someone other than Perry, and Perry explained that he was in the process of buying the car. Hicks had an outstanding warrant for failure to appear on a traffic ticket. Both Perry and Hicks consented *316 to a search of the car. A marijuana roach was found in a Kool cigarette pack which Hicks admitted was his. Hicks was arrested on the warrant, and Perry's parole officer was called to the scene. Perry admitted to his parole officer to using methamphetamine and was taken to the police station for a drug screen. Perry tested positive for marijuana and methamphetamine. When the passenger in Perry's vehicle told officers with the Claiborne Parish Metro Narcotic Task Force that he had purchased marijuana from Perry and that Perry probably had a substantial amount in his cottage, the parole officer conducted a warrantless search of the cottage and found a brick of marijuana weighing about a half a pound in the bedroom closet and a small amount of methamphetamine in a bedside table. Perry was charged in a two count bill of information with possession of marijuana with intent to distribute and second offense possession of methamphetamine.
A jury found Perry guilty of the lesser and responsive charge of attempted possession of marijuana with intent to distribute. Perry was found not guilty of the possession of methamphetamine count. The trial court sentenced Perry to ten years at hard labor.[1] Perry has appealed his conviction. For the reasons set forth below, we affirm both defendant's conviction and sentence.

Discussion

Motion to Suppress
Defendant moved to suppress the evidence seized at the search of his cottage and the statement he gave following his arrest. Initially, he claims that the stop by Officer Mills for a minor traffic violation was merely a pretext to allow further investigation concerning illegal drug activity.
The background of the traffic stop is as follows:
Sergeant David Morgan, a Haynesville police officer who was commissioned to work throughout Claiborne Parish as a member of the Claiborne Parish Metro Narcotics Task Force,[2] received a tip from a confidential informant ("C.I.") that defendant was trafficking drugs. Thereafter, on November 19, 2002, while driving through Homer, another city in Claiborne Parish, Sgt. Morgan spotted defendant driving a vehicle. Hicks was a passenger in the car. Sgt. Morgan noticed that neither defendant nor his passenger was wearing a seatbelt. Sgt. Morgan, who was in an unmarked vehicle, radioed Homer police for assistance and continued to follow Perry's vehicle. Homer Police Officer Russell Mills responded and pulled defendant's car over for the seatbelt violation. Another Homer police officer, Donald Malray, arrived at the scene of the stop.
The patrol officers followed standard procedure in checking registration and criminal history, then arrested Hicks on an outstanding warrant. Hicks admitted to having a small amount of marijuana in the car. Perry and Hicks consented to a search of the car. When Officers Mills and Malray found the butt of a smoked *317 marijuana cigarette, Sgt. Morgan called for assistance and another member of the Metro Task Force, Claiborne Deputy James Spillers, arrived on the scene with State Trooper George Shirey.
Defendant does not dispute that he was driving without wearing his seatbelt. Sgt. Morgan observed this violation and reported it to Officer Mills, who clearly had probable cause to stop the car defendant was driving. Defendant's complaint focuses on what he believes was the actual motivation for the stop. In effect, he argues that the police have co-opted traffic codes as a weapon to be used in the "war on drugs" by making stops for insignificant conduct, such as seatbelt violations, to search for drugs. However, constitutional reasonableness of a traffic stop does not depend on the actual motivation of the individual officer involved. Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).
In Whren, the U.S. Supreme Court held that the constitutional reasonableness of a traffic stop does not depend on an individual officer's motivations. All that is required is probable cause to believe that a traffic violation has occurred. The court found that it would be impractical to forbid law officers from stopping a traffic offender whom police suspect might be engaged in more serious criminal activity. The subjective motive of the individual officer is irrelevant if a violation of the traffic code has occurred. Whren, supra. In the instant case, the traffic stop was valid.
Officer Mills determined that the passenger, David Marcus Hicks, was wanted for failure to appear on a traffic ticket and properly took Hicks into custody. Hicks indicated to Officers Mills and Malray that he had a small amount of marijuana in the car and both Hicks and defendant consented to a vehicle search. Marijuana was found, and then the narcotic officers got involved.
Deputy Spillers recognized Perry and asked whether he was still on parole. Perry told Deputy Spillers that his parole officer was Carroll Holmes. Deputy Spillers called Holmes, who, along with probation officers Leah Smith and Shirley Warren, came to the scene. All three worked out of the Minden (Webster Parish) Probation and Parole office, but were in Homer to effect another arrest. When questioned, defendant told Officer Holmes that he had been using methamphetamine, and showed the officer a place on his arm where a blood vessel had been damaged when he injected the drug. Officer Holmes took defendant to the Homer Police Station for a drug screen. Defendant tested positive for marijuana and amphetamine.
Initially, Officer Holmes intended to release defendant for substance abuse treatment at the Pines Treatment Center in Shreveport; however, Deputy Spillers advised Officer Holmes that Hicks, who had been arrested and taken to the police station, claimed that he had bought marijuana from defendant, who probably had a substantial quantity of marijuana stored in his residence.
Defendant, at the end of October 2002, had moved into a one-bedroom caretaker's cottage located on property belonging to E.S. Toadvin. Defendant was working for Toadvin as a construction foreman. Loretta Morgan, who had recently completed a jail sentence for a drug offense, was living with defendant. Hicks had been the previous occupant of the cottage, having vacated it when defendant began his tenancy.
Probation Officers Holmes, Smith, and Warren told defendant that they wanted to search his residence for drugs. When asked whether they would find any drugs *318 at his home, defendant told the officers that he did have some "personal use" marijuana at his residence. The three officers took defendant to the cottage. Billy Berger was on the porch of the cottage and Loretta Morgan was inside on the couch. Claiborne Parish Deputy Matt Simmons was present at the cottage but did not take part in the initial search by the probation officers. At this time, Sgt. Morgan, Deputy Spillers and Trooper Shirey were searching Hicks' home pursuant to consent given by Hicks.
At Perry's cottage, the parole and probation officers first noticed evidence of marijuana in an ashtray in the living room, together with a small piece of burned foil. In the bedroom, the officers found more pieces of burned foil, the barrel of an ink pen, a plastic box containing a small amount of marijuana, and a small amount of methamphetamine hidden in a sock among some women's clothing in a bedside table. Testimony established that both the burned foil and pen are typically used in smoking methamphetamine. Hidden in a box in the bedroom closet, the parole officers found part of a brick of marijuana weighing close to a half pound. This closet contained defendant's clothes. At this point, the probation officers stopped their search and called the Metro Narcotics Unit for a full search.
As a general constitutional rule, warrantless searches are per se unreasonable under the Fourth Amendment to the United States Constitution. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). While a warrantless search is generally unreasonable, a person on parole or probation has a reduced expectation of privacy under the Fourth Amendment of the U.S. Constitution and under Article I, § 5 of the Louisiana Constitution. State v. Drane, 36,230 (La. App.2d Cir.09/18/02), 828 So.2d 107, writ denied, 02-2619 (La.03/28/03), 840 So.2d 566. La. R.S. 15:574.4(H)(4)(R) provides the parole officer with the authority to conduct a search of a parolee's home without a search warrant when the parole officer has reasonable suspicion to believe that the person on parole is engaged in or has been engaged in criminal activity since his release on parole.
An individual on probation or parole does not have the same freedom from governmental intrusion into his affairs as does the ordinary citizen. United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001); State v. Malone, 403 So.2d 1234 (La.1981); State v. Drane, supra. A parolee's reduced expectation of privacy occurs as a result of his prior conviction and the circumstances of his agreement to allow a parole officer to investigate his activities in order to confirm compliance with the conditions of his parole. State v. Drane, supra; State v. Carter, 485 So.2d 260 (La.App. 3d Cir.1986).
A reasonable suspicion that criminal activity is occurring is necessary for a probation officer to conduct the warrantless search. State v. Drane, supra; State v. Epperson, 576 So.2d 96 (La.App. 2d Cir.1991), writ denied, 580 So.2d 920 (La. 1991). In addition, even though warrantless searches by a probation or parole officer are allowed, courts are in agreement that the searches must not be a "subterfuge for criminal investigation." State v. Malone, supra, citing United States v. Dally, 606 F.2d 861 (9th Cir. 1979); State v. Drane, supra. The parole officer must believe that the search is necessary in the performance of his duties and reasonable in light of the total circumstances. State v. Odom, 34,054 (La.App.2d Cir.11/01/00), 772 So.2d 281.
To determine whether a warrantless search by a probation or parole officer *319 was reasonable, the Louisiana Supreme Court has adopted a four-part test, which is set forth in State v. Malone, supra. In order to ascertain whether a warrantless search is reasonable, a court must consider: (1) the scope of the particular intrusion; (2) the manner in which it was conducted; (3) the justification for initiating the search; and (4) the place in which it was conducted. The state bears the burden of proving the admissibility of any evidence seized without a search warrant. La. C. Cr. P. Art. 703(D); State v. Keller, 403 So.2d 693 (La.1981); State v. Drane, supra; State v. Shields, 614 So.2d 1279 (La.App. 2d Cir.1993), writ denied, 620 So.2d 874 (La.1993).
Applying the factors set forth in State v. Malone to the instant case, we find that the scope of the particular intrusion was appropriate, since it was done by probation and parole officers in their official capacity of investigating possible criminal activity by the defendant after he admitted to use and possession of illegal drugs. Almost immediately, the parole officers found in plain view in the caretaker's cottage where defendant was residing drugs and drug paraphernalia, which led to a more thorough search. During this more thorough search, the brick of marijuana was found in defendant's closet. The justification for the search was appropriate, in light of defendant's own admissions, as well as statements given by Hicks. A warrantless search of the home of a parolee can be conducted by a parole officer if the officer has a reasonable suspicion that criminal activity is occurring. Agent Carroll Holmes had such a suspicion. Accordingly, the search of defendant's home was a reasonable exercise of his authority as a parole officer.
Furthermore, there was no subterfuge to aid local law enforcement who were at the time off searching Hicks' home. Defendant had been validly stopped on a traffic violation. A parolee, defendant was in the company of a felon and drug user, and drugs were found in the vehicle. Defendant admitted to recent drug use, and Hicks had told the task force officer that he purchased drugs from defendant and that drugs were in defendant's cottage. Defendant's parole officer made the determination to search his home for drugs after learning this information. Agent Holmes was not even aware of the traffic stop until he was contacted by the officers and asked to come to the scene. When he arrived at the site of the traffic stop, Agent Holmes learned that defendant had violated the terms of his parole by associating with a known felon, Hicks, and by using marijuana and methamphetamine. The police officers did not participate in the initial search of defendant's home, but took part in the search after drugs were found by the parole agents. The search of the cottage was valid.
Defendant was arrested and returned to the detention center, where he was read his Miranda rights. He agreed to give a statement to State Trooper Shirey, Deputy Spillers and Sgt. Morgan. Defendant's statement was not recorded.
At trial, Deputy Spillers paraphrased defendant's statement as follows:
[Defendant] told agents that he obtained the marijuana which was seized from his residence ... from Marcus Hicks on 11-18-2002. [Defendant] further informed agents that he has been acquiring approximately one quarter pound amounts of marijuana from Hicks on a biweekly basis and storing marijuana for Hicks at his residence. [Defendant] denied that he had engaged in the distribution of marijuana. However, [defendant] admitted that he has witnessed Hicks distribute quarter pound quantities of marijuana to William Berger, Jr.

*320 . . .
[Defendant] admitted that he is a drug user and stated that he smokes approximately a half ounce of marijuana per week. In addition, [defendant] admitted that he is a frequent user of methamphetamine and that he last used methamphetamine on 11-18-2002. [Defendant] told agents that he last purchased methamphetamine on 11-16-2002 from Leonard Hicks.
Defendant contests the admissibility of his statement on the grounds that it was the fruit of an unconstitutional search. He also disputes the content of his statement as related by Deputy Spillers. The search has been found proper and the substance of the statement was weighed and resolved by the trier of fact. The trial court did not err in denying defendant's motion to suppress.

Sufficiency of Evidence
Defendant argues that the evidence was insufficient to establish that he constructively possessed the marijuana found in his closet or had any intent to distribute.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which is a determination of whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have reasonably concluded that all of the elements of the offense have been proved beyond a reasonable doubt, and does not extend to credibility determinations made by the trier of fact. La. Const. Art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, 02-3090 (La.11/14/03), 858 So.2d 422.
Constructive possession means having an object subject to one's dominion and control, with knowledge of its presence, even though it is not in one's physical possession. State v. Major, 03-3522 (La.12/01/04), 888 So.2d 798; State v. White, 37,261 (La.App.2d Cir.06/25/03), 850 So.2d 987.
In the instant case, defendant testified that he smoked marijuana in his residence and stated that he was aware that others used drugs there. Defendant also admitted that he had been present at Hicks' home the night before his arrest when Hicks divided up a brick of marijuana. Part of that brick of marijuana was found in defendant's closet, hidden in a box belonging to defendant. Although at trial defendant denied any knowledge about this marijuana in his closet, and Hicks testified that he put that marijuana in defendant's closet without defendant's knowledge, the state presented testimony from the arresting officers in which defendant admitted to them that he was storing the marijuana for Hicks.
Further, Hicks' trial testimony was impeached by his statements to the narcotics officers at the time of his arrest. Hicks was charged with possession of marijuana with the intent to distribute, based on a large quantity of marijuana found in his home. Hicks, whose job history included a stint as a prison guard, pled guilty and one of the conditions of his plea agreement was that he testify "truthfully" at defendant's trial.
At defendant's trial, however, Hicks recanted his earlier statements to police, testifying that he had stored the brick of marijuana in the closet of the caretaker's cottage without defendant's knowledge or permission. Hicks noted that he built *321 the cottage and had stored his marijuana out there "when there wasn't nothing but cinder blocks there."
Faced with two conflicting versions of how the marijuana came to be in defendant's closet, the jury was within its discretion in choosing to believe the original version told by defendant to the police. State v. Allen, 36,180 (La.App.2d Cir.09/18/02), 828 So.2d 622, writs denied, 02-2595 (03/28/03), 840 So.2d 566, 02-2997 (La.06/27/03), 847 So.2d 1255, U.S. cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
As to the intent to distribute, the critical factors in this case are defendant's statement that he stored marijuana for Hicks and that he knew of and even witnessed Hicks distribution of marijuana. In the instant case, the evidence, viewed in the light most favorable to the state, clearly creates an inference of an intent to distribute the larger amount of marijuana.

Identity of Confidential Informant
Defendant argues that the trial court erred in excluding any testimony regarding the confidential informant's identity and that this exclusion went beyond the privilege provided by La. C.E. art. 514; however, the objection before the court related to the relevancy of questions put to E.S. Toadvin.
Defendant called E.S. Toadvin, his employer and the owner of the caretaker's cottage in which defendant lived, to testify. As defense counsel was questioning Toadvin about a woman named Vicki Effertz, the state objected as to relevance. Defense counsel argued that Ms. Effertz was the C.I. and, as an informant, was not truthful. The trial court sustained the state's objection.
The trial court is vested with wide discretion in determining whether evidence is relevant. State v. Stowe, 93-2020 (La.04/11/94), 635 So.2d 168; State v. Emerson, 31,408 (La.App.2d Cir.12/09/98), 722 So.2d 373, writ denied, 99-1518 (La.10/15/99), 748 So.2d 470.
Whether or not Ms. Effertz was the C.I. who told the authorities that defendant was trafficking drugs was not relevant regarding defendant's possession. Further, the trial court did not bar testimony regarding Ms. Effertz. During his own testimony, defendant stated that Ms. Effertz was on the Toadvin property the day of his arrest, and that, when defendant left to pick up Hicks earlier that day, Ms. Effertz was on the property with several other drug users. This testimony was relevant to whether the marijuana was hidden in defendant's closet by Ms. Effertz.
However, even if it was error for the trial court to exclude this testimony, this ruling is harmless error in light of the large amount of evidence, regarding defendant's connection to the marijuana found in his closet. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Casey, 99-0023 (La.01/26/00), 775 So.2d 1022.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED.
NOTES
[1] The state filed a habitual offender bill of information, seeking to have defendant resentenced as a second felony offender. The appellate record does not reflect that the habitual offender hearing was completed before the record was lodged in this court. In his brief, defendant alleges that he was adjudicated a habitual offender in October 2004 and that he will be appealing this adjudication and sentence.
[2] On the date of the instant offense(s), Sgt. Morgan was employed by the Haynesville Police Dept. As of trial, he was still part of the Metro Narcotics Task Force, but had gone to work as a deputy with the Claiborne Parish Sheriff's Dept.