_[jGREMILLION, Judge.
In this case, defendant, Eugene Francis Knight, appeals his conviction for possession of marijuana in an amount of more than sixty, but less than two thousand pounds, in violation of La.R.S. 40:966(C) and (E), claiming that the trial court erred when it failed to grant his motion to suppress the evidence against him. For the following reasons, we affirm, but amend the sentence with instructions. „
FACTS AND PROCEDURAL DEVELOPMENTS
Defendant was stopped by Louisiana State Trooper Travis Savoy on Interstate 10, for failing to have a vehicle inspection sticker on his vehicle. He was detained for approximately forty minutes while awaiting the arrival of a canine unit, during which time the trooper questioned *1161 Defendant extensively regarding his employment. After the dog gave a positive narcotics odor response, a subsequent search revealed over three hundred pounds of marijuana hidden in the vehicle. Defendant was arrested and charged with possession of marijuana in an amount of more than sixty, but less than two thousand pounds, in violation of La. R.S. 40:966(C) and (E). Defendant subsequently filed a motion to suppress the evidence which was denied by the trial court. After that ruling, Defendant filed a writ application to our court. We granted his writ and ruled that the trial court erred when it failed to grant the motion to suppress. State v. Knight, an unpublished writ bearing docket number 01-150 (La.App. 3 Cir. 3/1/01). Following our judgment, the State sought review in the Louisiana Supreme Court, which reversed our judgment and reinstated the trial court’s denial of Defendant’s motion to suppress. State v. Knight, 01-0674 (La.5/4/01), 791 So.2d 645.
| ^Subsequently, at a hearing in the trial court, Defendant made oral motions to suppress the evidence, to compel discovery, and for a continuance of the trial. The trial court denied all three motions. Defendant then waived trial by jury and stipulated that the case would be submitted to the trial court for determination based on the evidence submitted at the hearings on the motion to suppress. The trial court found Defendant guilty as charged and sentenced him to fifteen years at hard labor without the benefit of parole, probation, or suspension of sentence and ordered him to pay a fine of fifty thousand dollars. Defendant now appeals his conviction, alleging as his sole assignment of error that the trial court erred when it failed to grant his motion to suppress the evidence.
MOTION TO SUPPRESS
In his assignment of error, Defendant raises two specific claims wherein he alleges that the trial court erred. First, he alleges the trial court failed to find that he was detained and questioned longer than reasonably necessary for the investigation and issuance of a citation for a minor violation without reasonable suspicion of additional criminal activity. Next, he alleges that the trial court failed to find that he was deprived of his constitutional rights when he was questioned as a part of a criminal investigation without first being properly Mirandized.
Initially, we note the arguments presented to us in the current appeal are identical to those presented in Defendant’s pre-trial writ application filed with this court on February 6, 2001. In Knight, 01-150 (La.App. 3 Cir. 3/1/01), we addressed Defendant’s first claim raised in the pretrial writ and in this appeal, that Defendant |awas detained longer than reasonably necessary without reasonable suspicion of additional criminal activity. We wrote:
The right to make an investigatory stop and question an individual detained must be based upon reasonable cause or suspicion to believe that the person has been, is, or is about to be engaged in criminal conduct. La.Code Crim.P. art. 215.1. A suspect’s extreme nervousness, without more, does not support reasonable suspicion that would justify a detention longer than necessary to investigate the initial traffic stop. In the present case, we find the only factor articulated by the trooper for Defendant’s continued detention was his extreme nervousness. The deputy’s testimony that he did not smell perfume seriously diminished the credibility of the trooper. Accordingly, we find the trial court erred in failing to grant Defendant’s motion to suppress the marijuana found in Defendant’s vehi- *1162 ele. Defendant’s remaining assignment of error is rendered moot.
The supreme court reversed our judgment and, when the matter went to trial, no new evidence was submitted by Defendant or the State.
This court has held that due deference will be accorded a court’s pre-trial ruling on motions to suppress. State v. Hand, 599 So.2d 472 (La.App. 3 Cir.1992). In Hand, the defendant moved to suppress the evidence and the trial court denied his motion. This court affirmed the lower court’s ruling. The defendant then filed an application for supervisory writ with the supreme court, which was denied. After the defendant reserved his right to appeal the trial court’s denial of his motion to suppress, he pled guilty and then appealed the trial court’s denial of his motion to suppress, raising no new issues or offering no new evidence. This court stated:
Accordingly, due deference will be accorded to this court’s pretrial decision finding no error in the trial court’s denial of defendant’s motion to suppress, and therefore, defendant’s repetitive claim will not be reconsidered. This is especially true in light of the fact that there is no trial record to support a suggestion that this court’s prior ruling was patently erroneous. There is no new evidence to cast doubt on the determination made by the trial court, this court, or the Louisiana Supreme Court.
| Jd. at 473.
We are mindful of the fact that the former decision in the instant case was rendered when this court exercised its supervisory rather than its appellate jurisdiction. The supreme court has stated that, on “questions of admissibility of evidence in advance of trial by granting a pretrial application for supervisory writs (rather than deferring judgment until an appeal in the event of conviction), the determination of admissibility does not absolutely preclude a different decision on appeal.” State v. Humphrey, 412 So.2d 507, 523 (La.1981), on rehearing. However, considering the supreme court’s ruling and the fact no new evidence was introduced into the record subsequent to the supreme court’s ruling to suggest that the ruling was patently erroneous, we shall defer to the supreme court’s pre-trial decision to reinstate the trial court’s denial of the Defendant’s motion to suppress the evidence. See also State v. Scott, 561 So.2d 170 (La.App. 1 Cir.) writ denied, 566 So.2d 394 (La.1990); State v. Fontenot, 550 So.2d 179 (La.1989). Accordingly, Defendant’s first claim is without merit.
However, we did not address Defendant’s second claim raised in his pre-trial application for review and in this appeal. Therefore, we will address the merits of his claim that he was deprived of his constitutional rights when he was questioned as a part of a criminal investigation without first being properly Mirandized. Defendant argues that he was “questioned as part of a criminal investigation regarding his occupation, travel plans and other in-culpatory matters prior to being advised of his constitutional right and without an arti-cululable (sic) suspicions to do so.”
|RAt the suppression hearing, Trooper Savoy testified that, on April 5, 2000, he was in Jefferson Davis Parish operating a “stationary radar” when his attention was drawn to Defendant’s vehicle. He noticed that Defendant’s vehicle did not display a vehicle inspection sticker so he decided to stop it. He activated his emergency lights, which caused Defendant to immediately slow his vehicle down and move to the shoulder of the highway. After stopping Defendant, Trooper Savoy exited his police vehicle and motioned Defendant to step to the rear. Defendant complied with his request. Trooper Savoy advised Defendant about the reason for the stop, *1163 explaining that Defendant’s vehicle did not display a “brake tag” or “motor vehicle inspection sticker.” Trooper Savoy stated that Defendant responded that he had just moved from Orlando to Louisiana approximately five or six months before, but had not yet bothered to get one. On cross examination, Trooper Savoy testified that Defendant complied with every request he made.
Upon Trooper Savoy’s request for identification, Defendant produced a Louisiana driver’s license. Trooper Savoy testified that he engaged Defendant in further conversation regarding his occupation and travel plans. He testified that Defendant told him he “dealt with vinyl products for the manufacturing of signs.” Upon his request that Defendant elaborate, Trooper Savoy explained that Defendant “had difficulty in doing that.”
On cross examination, Trooper Savoy testified that, as far as Defendant’s occupation, he wanted Defendant to explain to him exactly what type of products he manufactured for making signs. He stated that he wanted to know whether Defendant made the sign itself or any part of the sign. Trooper Savoy explained that he | ¿requested elaboration about Defendant’s occupation to see if he was a vinyl sign manufacturer although Trooper Savoy admitted he knew nothing about vinyl sign manufacturing.
Trooper Savoy also admitted that his questions about manufacturing signs had nothing to do with the traffic stop and that it was part of his ongoing criminal activity investigation. Although he did not Miran-dize Defendant, he intended to use Defendant’s responses as reasonable suspicion or probable cause against him. Trooper Savoy asked Defendant whether he was self-employed or worked for a particular company, to which Defendant responded that he had been in the business for five years and then opened his own business. When Trooper Savoy questioned Defendant about where he was traveling from, he testified that Defendant stated that he was on business and that he had traveled to Houston for two days visiting prospective clients. On cross examination, Trooper Savoy testified that his questioning of Defendant regarding his travel plans was part of his criminal investigation, and not part of his traffic violation investigation. He stated he further questioned Defendant as part of his criminal investigation as to whether he would be traveling back to New Orleans or whether he had other business meetings. Defendant responded that he was returning home.
Immediately after Defendant’s response to the questions regarding where he was coming from, Trooper Savoy requested Defendant to provide him with the vehicle registration and insurance documents. Defendant supplied the requested documents from the glove compartment of the vehicle. Trooper Savoy testified that Defendant was extremely nervous while he was interviewing him and that he failed [7to make eye contact. He said that Defendant’s pulse in his neck was “pounding profusely” and that, as he was chewing gum, “he continuously smacked on it very quickly.” According to Trooper Savoy, Defendant “continuously shifted his weight from one side to the other” and also “continuously ... looked at his watch.”
Trooper Savoy testified that Defendant’s actions “seemed unusual” to him indicating that Defendant was extremely nervous. He explained the difference between the “normal nervousness” of a traffic offender and the nervousness that Defendant displayed, “the violator, once you begin a rapport with that individual, speaking with them, eventually he’s going to calm down as you’re interviewing him. Whereas, someone who’s extremely nervous like in this case, the more you talk to them, the *1164 more they get nervous instead of calming down.” Trooper Savoy also testified that Defendant had a “very strong odor of perfume ... on his person,” which also struck him as unusual. Trooper Savoy testified that he became suspicious that illegal activity was taking place based upon Defendant’s demeanor, his smell, as well as the overbearing odor of perfume coming from the vehicle when Defendant retrieved the vehicle documents from the glove compartment.
Trooper Savoy returned to his vehicle and began a driver’s license, criminal history, and vehicle registration check. He also began filling out the traffic offense citation, as well as a consent to search form. Trooper Savoy testified that it took about ten minutes to get a response back from the dispatcher regarding the NCIC check. He explained that he decided to complete a consent to search form due to his observations of Defendant’s demeanor, his responses to his questions, and the strong odor of perfume he smelled, explaining that it was his experience that perfume is used |«as a masking agent for narcotics. When Defendant was presented with the consent to search form, he refused to allow the search.
Defendant argues that he was not informed of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the questioning of him was a subterfuge conducted with the intent to generate a reasonable suspicion to search his vehicle regardless of his answers or demeanor. Defendant claims that, once he became a suspect, he should have been given his Miranda warnings because Trooper Savoy did not have reasonable suspicion to ask him anything about his travel plans and his occupation:
Additionally, the “inevitable discovery” rule presupposes that the evidence would have been discovered by means wholly independent of any constitutional violation. The challenged evidence sought to be introduced by the state does not have an independent source. Mr. Knight’s Miranda rights were violated prior to his denial of consent to search and the officers’ subsequent use of the canine. Thus, the contraband would not have been discovered by lawful means.
The recent supreme court case of State v. Cowan, 99-2888, p. 1 (La.6/16/00), 763 So.2d 583, 584, held that “La.Code Crim.P. art. 215.1(D) does not preclude a police officer, who may lack reasonable suspicion of other criminal activity, from engaging a motorist in conversation while investigating a routine traffic violation.” In Cowan, the supreme court further stated that the officer’s conversation with the defendant, coupled with the canine unit’s alert on a closed and locked toolbox in the bed of the defendant’s truck, provided the police with probable cause to search for contraband. The supreme court also noted that the investigation had not yet passed its preliminary stages when the officers asked the defendant if he had a key to the toolbox and elicited the admission that he had the key, but would not give it to 19them. The court stated that the absence of Miranda warnings did nothing to taint the defendant’s responses. Id.
Further, there is nothing in the record to indicate that Defendant made any incul-patory statements as noted by the trial court:
I don’t think there’s any question of Mr. Knight having made any inculpatory statements, so there’s nothing-nothing for the Court to rule on insofar as statements being made. The only evidence appears to be the physical evidence, the marijuana that was found at the time of the search of the vehicle.
*1165 Finally, Miranda warnings are not essential prerequisites to non-custodial, general, on-the-scene interrogation to determine facts relating to whether or not a crime has been committed, or by whom, at least absent a showing that the questioning is past such investigatory stage. State v. Brown, 340 So.2d 1306 (La.1976); State v. Hodges, 349 So.2d 250 (La.1977), cert. denied, 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978), and State v. Copeland, 530 So.2d 526 (La.1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989).
In the instant case, Trooper Savoy had reasonable suspicion of additional criminal activity sufficient to detain Defendant long enough to bring in a canine unit. Additionally, the supreme court held in Cowan, 763 So.2d 583, that La.Code Crim.P. art. 215.1(D) permits a police officer, who lacks reasonable suspicion of other criminal activity, to engage a motorist in conversation while investigating a routine traffic violation. Therefore, Defendant’s claim that his constitutional rights were violated when Trooper Savoy failed to Mirandize him prior to engaging him in conversation regarding his employment lacks merit.
For the above reasons, Defendant’s assignment of error is without merit.
J^ERRORS PATENT
We review all appeals in accordance with La.Code Crim.P. art. 920 for errors patent on the face of the record. After reviewing the record, we note that there is one error patent. Defendant was sentenced to serve fifteen years at hard labor without benefit of parole, probation, or suspension of sentence. The sentencing range for possession of more than sixty, but less than two thousand pounds of marijuana, is ten to sixty years at hard labor. La.R.S. 40:966(E)(1) [1] Pursuant to La. R.S. 40:966(F), the imposition of sentence shall not be suspended and a defendant is not eligible for probation or parole prior to serving the minimum ten-year sentence.
Whether the trial court could impose the entire fifteen year sentence without benefits is not clearly answered by the wording of the statute. However, in State v. Tate, 99-1483, p. 2 (La.11/24/99), 747 So.2d 519, 520, in a per curiam opinion, the supreme court ordered that the defendant’s sentence of sixty years without benefit of parole, probation, or suspension of sentence be “vacated only to the extent that it eliminates from the defendant’s sentence the conditions required by law, and the defendant’s sentence is amended to provide that he serve 60 years imprisonment at hard labor without benefit of parole eligibility for 15 years.” The supreme court further stated:
Because La.R.S. 40:967(G) allows and requires the district judge to deny parole eligibility only for the minimum terms provided by La.R.S. 40:967(F), the district judge erred in denying parole eligibility for the entire second offender term imposed under La.R.S. 15:529.1(A)(l)(a). State v. Branch, 30,-733, pp. 15-16 (La.App. 2 Cir. 7/6/98), 714 So.2d 1277, 1287; State v. Wimberly, 95-1445, p. 6 (La.App. 4 Cir. 7/24/96), 678 So.2d 577, 580; State v. Shields, 614 So.2d 1279, 1285 (La.App. 2 Cir.1993).

Id.

We analogize the decision in Tate, which interpreted La.R.S. 40:967(G), a statute which is essentially identical to La.R.S. 40:966(F), in our interpretation of that statute in the instant case. Accordingly, we find that the trial court erred in sentencing Defendant to serve his entire sentence *1166 with the benefit of parole, probation, or suspension of sentence. We, therefore, amend Defendant’s sentence to provide he serve fifteen years at hard labor without the benefit of parole, probation, or suspension of sentence for ten years. The trial court is instructed to make an entry in the minutes reflecting this change.
CONCLUSION
Defendant’s conviction is affirmed. However, we amend his sentence to provide that he serve fifteen years at hard labor, with ten years to be served without benefit of probation, parole, or suspension of sentence and affirm the sentence as amended. The trial court is instructed to make an entry in its minutes reflecting the amendment to the sentence.
AFFIRMED; SENTENCE AMENDED WITH INSTRUCTIONS.

. We note that La.R.S. 40:966 was amended by Acts 2001, No. 403 § 4, effective June 15, 2001, and that the provision of the Act only had prospective effect.