NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

15-848

STATE OF LOUISIANA

VERSUS

MARY HENDERSON TRAHAN

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 124728
HONORABLE EDWARD RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*
**SYLVIA R. COOKS**
**JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy H. Ezell, and John E. Conery, Judges.

**WRIT DENIED.**

**Keith A. Stutes**
**District Attorney - 15th JDC**
**Daniel M. Landry, III, ADA**
**P.O. Box 3306**
**Lafayette, LA 70502**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**John Clay LeJeune**
**Attorney at Law**
**P.O. Box 1919**
**Crowley, LA 70527**
**(337) 788-1505**
**COUNSEL FOR APPELLANT:**
        **Mary Henderson Trahan**

**COOKS, Judge.**

On August 18, 2010, Relator, Mary Henderson Trahan, was found guilty of second degree murder. Relator was sentenced on August 26, 2010, to life imprisonment without the benefit of probation, parole, or suspension of sentence. Relator filed an appeal with this court. On July 6, 2011, this court vacated the conviction and sentence and ordered the trial court to enter an acquittal.[1] *State v. Trahan*, 11-148 (La.App. 3 Cir. 7/6/11), 69 So.3d 1240. The State sought review, and the Louisiana Supreme Court reversed this court's decision and reinstated Relator's conviction and sentence and remanded to the trial court for execution of the sentence. *State v. Trahan*, 11-1609 (La. 7/2/12), 97 So.3d 994.

On June 30, 2014, Relator timely filed an application for post-conviction relief with the trial court. A hearing on the PCR was held on November 6, 2014. Counsel presented argument, and the trial court ruled: "As I recall he [trial counsel] did a good job. I'm going to deny the motion." On December 8, 2014, Relator filed a notice of appeal and designation of record with the trial court. On December 10, 2014, the trial court granted Relator's motion.

This court lodged the appeal record on May 18, 2015. On May 19, 2015, this court issued a rule to show cause why this matter should not be dismissed, as the judgment at issue was not an appealable judgment. La.Code Crim.P. art. 930.6. On June 15, 2015, defense counsel filed a response to this court's rule to show cause acknowledging that the proper remedy would have been to file an application invoking supervisory jurisdiction and asking this court to consider the appeal as an application for writ of supervisory review.

Relator's appeal was dismissed on August 5, 2015. However, she was permitted to file a proper application for supervisory writs, in compliance with

---

[1]Judge Gremillion dissented and found the evidence was sufficient to enter the responsive verdict of negligent homicide.

Uniform Rules—Courts of Appeal, Rule 4, no later than thirty days from the date of that decision. *State v. Trahan*, 15-452 (La.App. 3 Cir. 8/5/15) (unpublished opinion).

On September 9, 2015, this court received Relator's timely application for supervisory review, wherein she alleged the following fourteen assignments of error: 1) her conviction was based on insufficient evidence; 2) the presumption of a motive violated Relator's right to due process of law; 3) Relator's right to due process of law was violated by the court's reliance on a statement by Relator that was never introduced at trial; 4) the court's emphasis on motive violated Relator's right to due process of law; 5) the court's ruling that defense counsel's opening statement amounted to a stipulation of fact shifted the burden of proof and precluded counsel from adjusting his defense; 6) the court's finding that defense counsel must set forth facts that he intended to prove at trial impermissibly shifted the burden to Relator to prove her innocence; 7) the court erred in relieving the State from its burden of proving each and every element of the crime charged beyond a reasonable doubt; 8) the court's ruling that the jury could consider facts not in evidence—Relator's statement to the police—violated her right to due process of law; 9) the court's ruling that the jury could rely on statements of defense counsel as evidence violated Relator's right to due process of law; 10) the court erred in ruling that the jury could presuppose Relator was lying; 11) ineffective assistance of counsel for failure to challenge blood spatter testimony; 12) ineffective assistance of counsel for failure to adequately cross-examine witnesses; 13) ineffective assistance of counsel for failure to support the defense theory; and 14) ineffective assistance of counsel for failure to introduce any evidence attacking the incomplete prosecution. Relator also tangentially raised several claims first raised but never addressed on appeal.

On April 13, 2016, this matter was granted and placed on the docket for consideration of the matter on the merits.[2] Briefs were subsequently submitted by Relator and the State.

Relator's writ first assigns error with respect to trial counsel's theory presented during opening statements, which indicated that Relator was fearful of the victim and that the shooting may have been accidental. Relator argues that her attorney's failure to adequately build and present the defense's theory throughout trial led the jury to convict her.

Relator also asserts that the supreme court's decision stood for the proposition that "the jury may rely on the argument of defense counsel, rather than the evidence," citing the following portion of the supreme court's decision:

> It clearly appears that most of the extra-record information provided by counsel came not from the state but from the defense when counsel outlined in his opening remarks the hypothesis of innocence, based on a statement jurors would never hear, that defendant slipped in her bathroom after disarming the victim and fired accidentally in the culminating event of an abusive relationship and a day-long argument. . . .
>
> Jurors were therefore entitled at the close of the evidence to hold the defense accountable for its failure to introduce any evidence in support of the hypothesis of innocence proposed by defense counsel, apart from the coroner's vague statement in response to questioning by the defense that he understood some sort of altercation had occurred earlier on the day of the shooting, a detail far more helpful to the state than the defense because it provided the only evidence of motive in the case.

*Trahan*, 97 So.3d at 998. Relator faults trial counsel for not eliciting testimony to support or contradict the theory presented during opening statements and argues the supreme court held that defense counsel's failure to produce any evidence in support of his theory was the basis for the conviction and life sentence.

Relator argues her attorney was ineffective for failing to object during the State's opening statement when it referred to the 911 call and argued Defendant

---

[2]Judge Ezell dissented and would have denied the writ application on the merits.

confessed during the call. The jury requested to review the 911 call during deliberations, but that request was denied because the trial court found the call was testimonial and not documentary in nature.

Relator next asserts trial counsel's failure to present a complete defense actually provided the only evidence to support the prosecution, asserting that the 911 tape and the opening and closing remarks, taken together, were sufficient to convict. In support, Relator cites to the supreme court's opinion:

> Jurors were also entitled to consider the direct evidence defendant provided in her admission to the 9-1-1 operator that she had shot the victim and to the first responders that the victim's body and the gun were still inside the house, the source for defense counsel's own judicial admission in his opening and closing remarks that defendant had killed the victim with the gun found by the police in the residence.

*Id.*

Trial counsel stipulated to the admission of the 911 tape into evidence. Relator asserted on appeal that there was confusion as to whether the stipulation was meant as an act of efficiency for the limited purpose of allowing the recording into evidence or whether the stipulation also included the admission that Relator indeed was the caller at the other end of the line with the 911 operator. Relator asserts now that the supreme court improperly construed the stipulation as an admission that Relator indeed fired the fatal shot. Relator asserts counsel was ineffective by "inextricably" binding her to this statement instead of requiring the State to prove she made the admission and by failing to argue the jury should have been allowed to listen to the recording again during deliberations.

Relator notes the prosecution failed to introduce anything in support of its opening argument claim that the shooting was the result of "acrimony" between the victim and Relator, resulting in an acknowledgement during closing that there was no such proof. Relator argues defense counsel was ineffective in his opening statement for setting forth a theory of accidental discharge/self-defense, thus

failing to anticipate the State's lack of evidence as to intent or, at a minimum, failing to adjust the defense theory when it became obvious the State would not be able to support its opening statement. Relator faults trial counsel for eliciting testimony from the coroner which indicated some sort of argument occurred prior to the shooting.

Relator asserts the State made no attempt to identify her at trial, to which trial counsel did not object, or to establish that the crime scene gun was in fact the weapon used to kill the victim. Relator then proceeds to argue that "the most important factor not considered by the jury was that the State did nothing to establish . . . intent," and trial counsel did nothing to "oppose this factor." Relator provides an overview of jurisprudence on sufficiency of the evidence and credibility determinations. She then asserts the State failed to present sufficient evidence to prove she committed the offense. Despite the admission on the 911 recording, she asserts there is no evidence she ever handled the gun or pointed it at the victim when it was fired. She argues the jury was required to make a "leap of faith" that she intended to kill the victim based only on the 911 call and evidence suggesting a shot at close range with a large caliber bullet. She asserts that finding intent is not a credibility determination but a factual determination and that the only evidence of a fight was solicited by her counsel.

Relator also asserts counsel was ineffective for failing to object to or question the qualifications of witnesses during cross-examination, resulting in the presentation of unqualified testimony as expert testimony. She again asserts there was no evidence the gun recovered was the weapon used to kill the victim and the State relied on an officer's testimony regarding the gunshot wound to prove the victim was shot at close range. Another officer testified about the nature of the injury and the effects of such an injury. Neither officer was qualified as an expert to testify to those facts, yet defense counsel did not object. She concedes a doctor

did testify to death caused by a gunshot wound but again highlights the testimony does nothing to support intent or use of the weapon discovered at the scene.

Relator further asserts that her defense attorney was ineffective for failing to challenge the sufficiency of the evidence where the State failed to prove all the elements of the offense.

Relator includes an argument on "intangibles . . . which are rooted in the holding of the Supreme Court." She cites to the supreme court's "holding that the evidence presented at trial *was shaped by the statement given by the defendant on the evening of the shooting*." She asserts no statement was ever made or written and no statement was provided as part of discovery. Furthermore, no statement was used at trial, and she did not testify. She asserts the supreme court erred in relying on "this mystery statement."

Relator also asserts the supreme court "ruled that the jury may presuppose that [she] was lying," which was apparently based on defense counsel's failure to put on the defense alluded to in opening.

In conclusion, Relator asserts "[i]f you read the transcript" of the entire trial, excluding openings and closings, "no reasonable trier of fact can conclude that [she] is guilty." She asks this court to reverse her conviction and enter a judgment of acquittal.

Many of Relator's alleged errors can be resolved by simple reference to the penultimate paragraph of the supreme court's ruling in *Trahan*, 97 So.3d at 999-1000:

> A rational trier of fact could find from this evidence that defendant discharged the high-powered hand gun by pulling the trigger while holding the gun no more than three or four feet from the victim as he stood defenseless and bent over the washbasin in the bathroom with his back turned towards her, and from that evidence, that defendant had the specific intent to kill or to inflict great bodily harm, although she may then have become emotionally overwrought by what had just happened. Other scenarios involving an accidental discharge of the revolver, but not involving the failed hypothesis of

innocence proposed by defense counsel and rejected by jurors, were possible but not so probable that a rational juror would *necessarily* have a reasonable doubt as to defendant's guilt.

Relator's argument that there was insufficient evidence to prove each element of the crime was squarely addressed and decided by the supreme court. While this court may have reached a different conclusion, the supreme court found specific intent sufficiently proven and reinstated Relator's conviction. This court will not address the adequacy of the supreme court's ruling, as that ruling is law of the case. *Cf. State v. Knight*, 02-513 (La.App. 3 Cir. 10/30/02), 829 So.2d 1160. For the same reason, Relator's claims regarding the burden of proof, motive, statements made by Relator, opening statements, and Relator's veracity will not be reviewed by this court.

What remains of Relator's argument is ineffective assistance of counsel. Indeed, ineffectiveness was the only issue addressed by the court during the PCR hearing. The trial court judge denied the motion because he thought trial counsel "did a good job." In order for Relator to succeed in reversing the jury verdict, she must show both deficient performance and prejudice as a result of her attorney's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

Relator attacks counsel's failure to challenge blood spatter testimony, failure to adequately cross-examine witnesses, failure to support the theory presented during opening, and failure to introduce evidence attacking the "incomplete" prosecution. The supreme court's opinion contradicts the idea that trial counsel failed to challenge the blood spatter testimony:

> Defense counsel also wrangled with the state's blood spatter expert over his opinion that the victim had been shot in the back as he bent over the wash basin in the bathroom. Counsel suggested that the bullet would have taken a downward trajectory in that scenario but the evidence established that the bullet had traveled upwards, a trajectory counsel clearly thought consistent with defendant's account to the police that the victim, whom she described as an inch taller than she,

had turned away from her momentarily when the gun discharged then turned back with his face full of fear. In the face of vigorous cross-examination, the expert maintained his opinion that the trajectory of the bullet was entirely consistent with the victim bending over the wash basin when he was shot.

*Trahan*, 97 So.3d at 996.

As to Relator's claim that counsel failed to adequately cross-examine certain witnesses, she asserts those witnesses were allowed to testify to facts outside their knowledge without objection from defense counsel and that none could testify to the intentional nature of the shooting or to other facts, such as the weapon used to shoot the victim. This argument is somewhat repetitive of previous arguments regarding sufficiency of the evidence, but Relator's claim that certain lay witnesses testified to facts as "experts" warrants some attention. Specifically, she cites to Detective Angelle's testimony regarding "stippling" around the entry wound indicating discharge of the weapon at close range and Officer Prejean's testimony that the fatal shot occurred some three to four feet away. The supreme court's ruling relied on the nature of the shooting at close range in concluding that the jury could have inferred specific intent.

The transcript of the trial indicates Detective Angelle was a crime scene investigator and that he photographed the stippling because, to him, it indicated a "close contact gunshot wound." Also, defense counsel challenged Officer Prejean's testimony that the shot occurred within three feet by contrasting his testimony with that of the coroner, who testified the cause of death was by gunshot wound from up to four feet away. Relator does not challenge the coroner's testimony. The coroner testified he conducted approximately "2,000 forensic-type autopsies, approximately 50% of those have been homicides, the majority of which have been gunshot wound cases." He explained in this case "[s]tippling is punctate abrasions surrounding the gunshot entrance in defect [sic]. Stippling is caused by the impact of partially burned or unburned propellants or gunpowder. Stippling is

only present if the weapon is held in close enough proximity to the skin surface." On cross, he explained the range was a few inches to four feet and stippling would be "unlikely" beyond four feet. Given the totality of the coroner's testimony, we cannot say counsel was ineffective for not challenging the supposed lay witness testimony of the officers.

As to the claim of counsel's failure to pursue the theory presented in his opening statement, it is possible defense counsel anticipated an acquittal or a verdict of guilty of a lesser-included offense and simply relied on the paucity of evidence instead of aggressive cross-examination. Though counsel suggested he wanted the jury to "hear her story" during opening, he may have changed tactics during trial based on his perception of weaknesses in the State's case. The most probable way counsel would have introduced Relator's "story" to the jury would have been to call her to the witness stand, opening her up to the possibility of damaging cross-examination. Alternatively, counsel could have brought this story out through cross-examination of the witnesses, but such questions would have potentially been harmful as well. Indeed, the supreme court noted the only evidence of motive for the killing came from the defense attorney's inquiry of the coroner regarding an argument Relator had with the victim earlier in the day—a point Relator also uses to argue her attorney was ineffective. Questioning a defense attorney's reasonable trial strategy, with the benefit of hindsight, is a disfavored practice:

> An alleged error can be construed as trial strategy if there are differing views regarding the advisability of a tactic: This court has long agreed with our brethren of the fourth circuit in recognizing "that if an alleged error falls 'within the ambit of trial strategy' it doesn't 'establish ineffective assistance of counsel.' *State v. Bienemy*, 483 So.2d 1105 (La.App. 4 Cir.1986)." *State v. Sias*, 03-891, p. 6 (La.App. 3 Cir. 12/10/03), 861 So.2d 829, 834, *quoting State v. Schexnaider,* 03-144, p. 18 (La.App. 3 Cir. 6/4/03), 852 So.2d 450, 462. This court has repeatedly used this approach to trial strategy. *State v. F.B.A.*, 07-1526 (La.App. 3 Cir. 5/28/08), 983 So.2d 1006, *writ denied,* 08-1464 (La.3/27/09), 5 So.3d 138; *State v. Duplichan*, 06-852 (La.App. 3 Cir.

12/6/06), 945 So.2d 170, *writ denied,* 07-148 (La.9/28/07), 964 So.2d 351; *State v. Collins*, 04-1441 (La.App. 3 Cir. 3/2/05), 896 So.2d 1265, *writ denied*, 05-1334 (La.1/9/06), 918 So.2d 1040.

The Louisiana Supreme Court has directly addressed the issue of trial strategy when reviewing an ineffective assistance of counsel claims in *State v. Brooks*, 505 So.2d 714 (La.1987) where it stated:

> While opinions may differ on the advisability of such a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052[, 80 L.Ed.2d 674] (1984).

*State v. Truehill*, 09-1546, p. 17 (La.App. 3 Cir. 6/2/10), 38 So.3d 1246, 1257-58.

The task of evaluating defense counsel's trial strategy is further complicated by Relator's failure to call her trial attorney to testify at the PCR hearing. Without his testimony, we are left to speculate as to the efficacy of one trial strategy over another. As such, the claim lacks merit.

Finally, Relator alleges ineffective assistance for counsel's failure to present any evidence attacking the State's "incomplete" prosecution. Relator did not specifically brief this issue or indicate exactly what type of evidence counsel should have introduced to attack the State's case.[3] In any event, this assignment of error is essentially the same as the argument that counsel failed to support the theory presented in his opening statement. Accordingly, this claim is denied as well, as it would require this court to second-guess trial counsel's trial strategy.

We also note some of the errors alleged by Relator were raised on appeal. This court only addressed insufficiency on appeal and stopped its analysis there because it was a controlling issue:

> Defendant also presents the following assignments of error: (1) the trial court erred in allowing the prejudicial misstatement of the prosecutor during his opening statement and in failing to allow the jury to review the 911 tape during deliberations; (2) the trial court

---

[3]At the PCR hearing, counsel did suggest that no "criminologist or blood spatter expert [was called] to contradict some of the findings by the police officers." However, counsel at the hearing failed to expand on what, exactly, such witnesses would have provided.

erred in allowing a slide photo of the words "Second Degree Murder" during the voir dire examination; (3) there was insufficient evidence presented to identify Defendant as the perpetrator; and, (4) there was insufficient evidence presented to establish that the .357 Magnum found on the scene belonged to the victim or caused the death of the victim. Because we find that there was insufficient evidence to convict Ms. Trahan of second degree murder or any of the lesser included offenses, her other assignments of error are rendered moot because our holding bars retrial on the same charge. *Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).

*Trahan*, 69 So.3d at 1241 n.1. Upon reversing this court's decision and affirming the conviction, the supreme court only remanded the matter to the trial court for execution of sentence. Therefore, Relator's other assignments of error were never considered by this court. Here, Relator's application again raises assignments of error numbers one, three, and four.

The "prejudicial misstatement" Relator refers to is the prosecutor's statement during opening when he asserted Relator admitted to shooting the victim. Specifically the prosecutor stated, "'She says, I shot him, on the 911 tape.'" She argues now this statement "is a pure misstatement of fact." While Relator never said she shot the victim, she did say "It's me" when the 911 responder asked whether the person who shot the victim was still there. We do not find the statement to be an "exaggeration" as Relator suggests. Furthermore, opening statements are not considered evidence. *See Trahan*, 69 So.3d at 1246. She asserts the prosecutor's statement violates La.Code Crim.P. art. 767, which prohibits reference to an inculpatory statement without there first being a ruling on the statement's admissibility. She argues her attorney's failure to object constituted ineffective assistance. However, trial counsel stipulated to the admissibility of the statement immediately after opening but before the State called its first witness, indicating a prior understanding that the statement would be admitted into evidence.

Relator's argument that she was not identified at trial is without merit as well. Upon cross-examining Officer Sonnier, who was the first to respond to the scene, defense counsel stated, "I represent Mary Trahan, the lady sitting at this table." He then asked, "Is that the lady that you saw on the night in question?" to which the witness responded, "Yes, Sir."

Further, there is no requirement that the State prove the weapon found by police belonged to Relator or that the murder weapon be produced. *See State v. Sarpy*, 10-700 (La.App. 3 Cir. 12/8/10), 52 So.3d 1032, *writ denied*, 11-46 (La. 6/3/11), 63 So.3d 1006.

For these reasons, Relator's writ application is denied.